TIGHTS, INC., Appellee,

v.

ACME–McCRARY CORPORATION et al., Appellants,

and

Orin R. York et al., Defendants.

No. 75–1103.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1975.

Decided July 12, 1976.

Certiorari Denied Nov. 29, 1976.

See 97 S.Ct. 493.

Simon H. Rifkind, New York City, Paul B. Bell, Charlotte, N.C. (Floyd A. Gibson,

John L. Sullivan, Jr.; Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N.C., Bernard Ouziel; Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Thornton H. Brooks; Brooks, Pierce, McLendon, Humphrey & Leonard Greensboro, N.C., on brief), for appellants.

Jack W. Floyd, Greensboro, N.C. (Richard W. Ellis, James A. Medford, Smith, Moore, Smith, Schell & Hunter, Greensboro, N.C., on brief), for appellee.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This appeal concerns the validity of Rice Patent No. RE 25,360 covering unitary ladies' garments consisting of a pair of stockings formed together with a pair of underpants constructed so as to eliminate the need for garter attachments and belts. Tights, Inc., the owner of the challenged patent (hereinafter referred to as the Rice Patent), originally instituted this action against Acme-McCrary Corporation alleging patent infringement and seeking both damages and injunctive relief. Acme-McCrary, in its answer, denied infringement on the ground that the patent was invalid and consequently unenforceable. In addition, it counterclaimed for a declaration of invalidity under 28 U.S.C. §§ 2201 and 2202 and a permanent injunction against Tights restraining it from making any further allegations of infringement based upon the Rice Patent. The case was subsequently consolidated with two similar actions instituted by Tights against Kayser-Roth, a New York corporation, and Adams-Millis, a North Carolina corporation, each of which was alleged to have infringed upon the Rice Patent.

Prior to trial, the parties agreed that if the Rice Patent were upheld as valid, the defendants were guilty of infringement. Accordingly, the only questions submitted to the jury concerned the validity of the patent. Following a verdict in favor of Tights, the district court entered judgment against Acme-McCrary, Kayser-Roth, and Adams-Millis on the grounds that the Rice Patent was valid, enforceable and infringed. This appeal followed.

The appellant-defendants seek reversal on the grounds that the trial court erred in failing to rule the patent invalid as a matter of law, in submitting the question of obviousness to the jury, and in ruling as it did regarding the admissibility of certain evidence. We are of opinion the contentions are without merit and affirm the judgment of the district court.

THE RICE PATENT

Application for the Rice Patent was originally made on November 9, 1956. After being issued in 1958 with an inconsequential mistake in the claim, the patent was surrendered for re-examination prior to a second issue. On March 26, 1963, the patent was reissued as No. RE 25,360, the patent which the appellants challenge. Thus, the Rice Patent was examined by the Patent Office on two separate occasions prior to its final issuance.

The claim in the reissued Rice Patent described a combination panty and stocking formed from a circularly knit fabric which included the following elements: a pair of seamless stockings having foot, leg, and welt portions; the welt portions being knit of stretchable yarn and extending above the knee to the waist of the wearer; the stocking having a longitudinal slit and positioned so that the slits are adjacent each other; and a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam intermediate to a single enlarged welt and defining the panty.

While Rice spoke in terms of a "combination panty and stocking," as can be seen from the sketch below, he was, in fact, describing what has come to be known as panty hose.

[See following illustration]

E. G. RICE

COMBINATION STOCKINGS AND PANTY

U-Shaped Seam →

Elongated Welt

\* From drawing accompanying Patent No RE 25,360 issued March 26, 1963 to E. G. Rice.

This is not to say, however, that the Rice Patent purports to cover all such garments. To the contrary, the patent is restricted by its terms to those panty hose constructed with a single U-shaped seam running from front to back through the crotch area and having no intervening crotch-piece or gusset. That was decided in *Morpul v. Glen*

*Raven Knitting, Inc.*, 357 F.2d 732 (4th Cir. 1966), a suit concerning this same patent.

The significance of the unitary U seam described by Rice is reflected in the associated cost reduction in panty hose produced in this manner as opposed to those manufactured with a crotch-piece. According to witnesses appearing on behalf of Kayser-

Roth, the use of the unitary U-shaped seam reduced production costs by 12 to 24 cents per dozen. Tights estimated the savings at between 20 and 25 cents per dozen. Such cost savings are substantial when considered in terms of total production. For example, in the case of Kayser-Roth, which produced an average of approximately 35,000 dozen panty hose per week in 1970, the elimination of the crotch-piece would have resulted in admitted cost savings of at least $4,200 and as much as $8,750 a week.

## TRIAL COURT PROCEEDINGS

■ With the exception of the questions of patent validity, the parties and the court below resolved or otherwise eliminated from the trial all other issues, including the issue of infringement. Thus, the only substantive issues presented to the jury were whether the Rice Patent was anticipated by the prior art in the field and therefore not patentable under 35 U.S.C. §§ 101 and 102; whether the subject matter of the patent was obvious and consequently not patentable under 35 U.S.C. § 103;[1] and whether fraud on the Patent Office had been committed.

■ The relevant statutory provisions with which the court was concerned then provide in part as follows:

§ 101. *Inventions Patentable.*

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . .

§ 102. *Conditions for patentability; novelty and loss of right to patent.*

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention

thereof by the applicant for patent . . . .

§ 103. *Conditions for patentability; non-obvious subject matter.*

A patent may not be obtained . . . if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. . . .

These sections establish novelty, usefulness and obviousness tests, all of which are relevant in determining the question of patentability. See *Graham v. John Deere,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965). The defendants argue that the Rice Patent does not describe any new or novel product since it was both anticipated by and obvious from the prior art in the field. Consequently, they contend that the patent was improvidently granted.

■ As to each of these points, however, the burden of proof is on the defendants, and the Rice Patent, having been issued by the Patent Office, is presumed valid. 35 U.S.C. § 282; *Blohm & Voss AG v. Prudential Grace Lines, Inc.,* 489 F.2d 231, 244 (4th Cir. 1973), cert. den. 419 U.S. 840, 95 S.Ct. 70, 42 L.Ed.2d 67 (1974); *White v. Mar-Bel, Inc.,* 509 F.2d 287, 391 (5th Cir. 1975); *Moore v. Shultz,* 491 F.2d 294, 298–9 (10th Cir. 1974), cert. den. 419 U.S. 390, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974). The basis for this presumption was set out by the Second Circuit in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 258 F.2d 124 (2d Cir. 1958), cert. den. 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958), where the court stated: "Expertness and experience in passing upon patents lies primarily in the Patent Office and these important factors are only partially offset by the greater con-

---

1. In the defendants' proposed jury issues, they requested that the jury be asked whether the Rice claim particularly pointed out in clear, unambiguous language the subject matter which it claimed as inventive in accordance with 35 U.S.C. § 112. In a conference in the trial judge's chambers at or near the close of the evidence, however, the defendants expressly agreed that this issue should not be submitted to the jury. Thus, the question as to specificity under § 112 was effectively withdrawn from the case at the trial and is, therefore, not a matter before this court on appeal.

centration and the additional relevant evidence which can be brought to bear in any particular patent litigation in the courts." *Id.* at 133. The jury, without objection, was told in the special verdict form it must find invalidity by clear and convincing evidence. Accord *Moore,* p. 299; see *Gulf Smokeless Coal Co. v. Sutton, etc.,* 35 F.2d 433, 437 (4th Cir. 1929).

During the trial of the case, following some nine days of testimony, the defendants, at the close of all the testimony, moved for a directed verdict, contending the Rice Patent to be invalid. The basis for this motion was the contention that the evidence conclusively established that the patented product described in the Rice claim was fully anticipated under § 102 by the prior art in the field.[2] This motion was denied and the case thereafter submitted to the jury, which was given eight interrogatories. These interrogatories inquired of the jury:

1. whether they found "the subject matter of the Rice Patent to be not new within the meaning of the word as used in the patent laws;"

2. whether they found "the subject matter of the claim of the patent was known or used by others in this country before the invention thereof by Rice;"

3. whether they found the "subject matter of the claim of the Rice Patent was patented or described in a printed publication in this or a foreign country more than one year prior to the date of the application for the patent in this suit, namely November 9, 1956;"

4. whether they found "the differences between the claim in the Rice Patent and the prior art [were] such that the subject matter of the claim as a whole would have been obvious, at the time the invention was made by Mr. Rice, to a person having ordinary skill in the art to which the subject matter of the claim pertained;"

5. whether they found "United States Patent No. 475,734 issued to Sutton (1892) [was] more pertinent in any respect to the claimed subject matter of the Rice Patent than any of the patents cited by the Examiner in the application for the Rice Patent;"

6. whether they found "the applicant for the Rice Patent failed to bring the Sutton Patent (1892) number 475,734 to the attention of the Patent Office during the pendency of the application of the Rice patent;"

7. whether they found "the failure of the applicant for the Rice Patent to bring the Sutton Patent number 475,734 to the attention of the Patent Office during the pendency of the application for the Rice Patent to be purposeful, deliberate and intentional;" and

8. whether they found "that the United States Patent Office would not have issued the Rice Patent if it had considered the Sutton Patent number 475,734 during its examination of the Rice Patent application.

The Sutton Patent referred to in the special verdict also dealt with a waist-to-toe garment. It was the defendants' position throughout that this particular patent was not brought to the attention of the Patent Office by Rice at the time he sought his patent and that, if it had been, the Rice Patent would not have issued since Sutton purportedly disclosed each and every feature of the claim made by Rice. The jury disagreed, however. It found that Sutton had been brought to the attention of the Patent Office and that it was no more pertinent in any respect to the Rice claim than any of the other patents referred to in the patent application. It further concluded that even if Sutton had not been brought to the attention of the Patent Office, any such failure to do so was not purposeful and would not have affected the issuance of the Rice Patent in any event. As to the remaining interrogatories, the jury answered all questions in favor of the validity of the patent, and judgment was accordingly en-

2. In addition, they asserted that the evidence established the patent was procured through fraud. No motion for a directed verdict was ever made based upon the question of obviousness under § 103.

tered in favor of Tights and against the defendants.

Thereafter, the defendants, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The sole basis for this motion was their contention that the Rice Patent was obvious under § 103 of the Act. Specifically, they asserted that the jury's findings relative to the Sutton Patent were clearly erroneous in light of the evidence presented at trial. This motion was denied by the trial judge and appeal to this court was taken.[3]

## I

### PATENT VALIDITY AS A MATTER OF LAW

a. *Patentability of Rice Claim under §§ 101 & 102.*

■ The defendants first contend that the Rice Patent is "invalid as a matter of law" since it was fully anticipated by the prior art in the field and consequently lacked novelty under §§ 101 and 102. As such, they assert that the district court erred in not granting their motion for a directed verdict. In support of this position, they have cited numerous patents and publications which pre-date the Rice application and which they claim disclose products with the same elements performing the same functions in the same way as Rice. Each of these prior art forms was, however, brought to the attention of the jury below which nevertheless found that the subject matter of the Rice Patent was new in that it was unknown to others prior to Rice's application. We are of opinion that there is

ample evidence to support the jury's findings and that the district court did not err in denying the appellants' motion for a directed verdict.[4]

### Standard of Review

■ We begin with the observation that the rules governing appellate review of patent cases are no different than in other types of civil litigation. See, e. g., *Armour & Co. v. Wilson & Co.*, 274 F.2d 143 (7th Cir. 1960). Thus, in determining whether the verdict in this case should have been directed, we must apply the same standard employed by the district court in passing on the original motion. *Calloway v. Cent. Charge Serv.*, 440 F.2d 287, 289, n. 2 (D.C. Cir.1971); *Alman Bros. Farms & Feed Mill, Inc. v. Diamond Lab., Inc.*, 437 F.2d 1295, 1298 (5th Cir. 1971). As such, the question becomes whether there was sufficient evidence to support a verdict for the party opposing the motion, in this case, Tights. *Ralston Purina Co. v. Edmunds*, 241 F.2d 164 (4th Cir. 1957), cert. den. 353 U.S. 974, 77 S. Ct. 1059, 1 L.Ed.2d 1136 (1957). In assessing the sufficiency of the evidence, however, our power of review continues to be limited by the Seventh Amendment, which provides that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." See *A & G Stevedores v. Ellerman Lines*, 369 U.S. 355, 359, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1969). We may not, therefore, weigh the evidence, pass on the credibility of witnesses, or substitute our judgment of the facts for that of the jury. See 9 *Wright & Miller*, Federal Practice and Procedure, § 2524 (1971), *and cases cited therein.* Instead, we must view the evi-

---

3. In their post-verdict motion, the appellant corporations made no mention of the question of anticipation under § 102, which, along with the fraud question, had been the sole basis for their earlier motion for a directed verdict.

4. In attacking the district court's denial of their motion for a directed verdict, the defendants are, in essence, challenging the sufficiency of the evidence to support the jury's verdict. We note as a procedural matter that the failure of

the defendants to move for a judgment notwithstanding the verdict on the grounds of anticipation may well have deprived them of a right to review on this question. See *Ward v. Banquet Foods Corp.*, 488 F.2d 141, 142, n. 1 (8th Cir. 1973), and compare *Brown v. Alkire*, 295 F.2d 411 (10th Cir. 1961). Being of opinion that the defendants' assertions must fail in all events, however, we do not find it necessary to reach that question here.

dence in the light most favorable to the party against whom the motion is made, giving him the benefit of all reasonable inferences from the evidence. *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 427 F.2d 862, 868 (4th Cir. 1970); *Shelton v. Jones,* 356 F.2d 426 (4th Cir. 1966).

With this in mind then, we turn to the evidence presented at trial as it related to the question of anticipation.

### Sufficiency of the Evidence

There is no dispute that the Rice Patent is a combination patent. It brings together elements known to the art in such a manner as to produce a new and different product. The evidence establishes that the combining of pants and stockings to form a single waist-to-toe garment was known to the art prior to Rice's patent application. The Goodman Patent, No. 2,697,925, for example, was issued in 1954 and taught the joinder of full-fashioned [5] stockings to form a single garment. Another earlier patent, Appleton (British No. 15,835), was issued in 1894, and similarly taught the joinder of men's stockings by means of a seam extending from the rear of the waist to the bottom of a fly in the front.

Based upon these and other prior art references, the defendants assert that the Rice Patent is invalid as a matter of law since it was fully anticipated. This, they contend, is so despite the fact that the various elements brought together in Rice may not necessarily have been collected in any one of these prior art references. It is enough, they argue, that the evidence taken as a whole discloses that all of the claimed elements are found in different prior patents in the art or in different devices previously in general use.

 We are of opinion, however, that this position is not a correct statement of the law relating to anticipation, and adopt instead the standard set forth in *Ceramic Tilers Supply, Inc. v. Tile Council of Ameri-*

*ca, Inc.,* 378 F.2d 283 (9th Cir. 1967). There, the court stated:

"Anticipation is a technical defense which must meet strict standards: 'Unless all the same elements are found in exactly the same situation and united in the same way to perform the identical function' in a single prior art reference 'there is no anticipation.'" *Id.* at 284–85

See also *Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp.,* 372 F.2d 263, 267 (2d Cir. 1967).

 The combination of such previously known elements must, of course, create a new functional relationship in order to constitute a novel invention. Thus, the Supreme Court, in *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), struck down as invalid a combination patent involving three known elements, a grocery counter, a three-sided frame, and guides. There, however, the elements remained functionally unchanged when combined, performing exactly as they had and would have been expected to prior to the combination. Thus, there was a complete absence of novelty in the patent product.

In the instant case, the evidence indicated that panty hose made according to Rice's specifications, without fashioning and with a single U-shaped seam running through the crotch area from front to back, were not substandard garments, contrary to the expectations of those in the industry. Rather, they were found to be just as good as panty hose produced with a crotch-piece or gusset, despite the fact that they were cheaper to produce. Put differently, the evidence presented here tended to show that the combination of elements in the Rice Patent created what the Court found lacking in *A & P,* a new and functionally revolutionary product which represented a significant improvement over the prior art in the field.

The question remains, however, whether the elements of the Rice Patent were united

---

**5.** Full-fashioned, unlike modern panty hose, was contoured to fit the wearer. This was done by inserting fabric to make the garment larger at the hip and crotch areas.

in the same way in any single prior art form. We believe the jury was justified in concluding they had not been. The Sutton Patent, No. 475,734, which the defendants argue incorporated each and every feature of the Rice claim, was shown to relate to a fashioned or contoured garment, one version of which included a separately fashioned gusset or crotch-piece, and which included flat knitting for the panty portion and additional fabric for the crotch in all events.[6] A second prior art form, a German patent granted one Voight, also disclosed an enlarging crotch-piece rather than a single U-shaped seam, as did the Goodman Patent previously discussed. In addition, the Appleton Patent, which was also cited to the jury as an anticipation by prior art, was shown to call for the inclusion of a crotch-piece along with a fly.

Thus, we are of opinion that no one of these references contains all of the elements taught by Rice. Concededly, much of the evidence as to the nature of these prior art references is in conflict. Yet, the weight of the evidence and the credibility of the witnesses are matters reserved to the trier of fact, in this case the jury, and its decision must be respected. Accord *Gunning v. Cooley*, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720 (1930). This court must remain mindful of the fact that it is a court of review and not a court for the retrial of cases. *Collins v. Owen*, 310 F.2d 884, 887 (8th Cir. 1962). Given the evidence presented, then, we find no error in the district court's refusal to direct a verdict as to anticipation, and, consequently, are of opinion that the jury's verdict must be sustained.

**b.** *Obviousness of the Rice Patent under § 103.*

Under 35 U.S.C. § 103, a patent may not be obtained where the subject matter of the claim is "obvious at the time the invention was made to a person having ordinary skill in the art." The defendants contend that even if this court should find Rice not to have been anticipated, it must be deemed obvious under § 103. The jury found otherwise, however, and we find no basis in the record for upsetting that determination.[7]

In *Graham v. John Deere*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court carefully analyzed the non-obvious standard set out in § 103. In so doing, it set out the standard which guides us here:

"[T]he § 103 condition . . . lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined. Such secondary considerations as commercial success . . . might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or non-obviousness, these inquiries may have relevancy." *Id.* at 17, 86 S.Ct. at 694.

The question becomes then whether, based upon these criteria, the evidence supports the jury's determination that the Rice Patent was non-obvious in light of the prior art in the field.

**6.** A superficial view of Figure 2 in the Sutton patent may leave the impression that an additional crotch-piece in Sutton is merely optional. However, plaintiff's highly qualified expert witness, Peel, testified it was optional only to the extent that Sutton taught the adding of additional material to the panty portion of the garment in the crotch area. Thus, whether by a separate gusset or by the knitting of additional material into the garment, Sutton, who was dealing with a flat knit, fashioned panty, taught that extra fabric was necessary in the crotch area.

**7.** The defendants also assert that the district court erred in submitting the question of obviousness to the jury, since, under *Graham v. John Deere*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), this is a question of law and not fact. This contention is discussed at more length in Part II of this opinion. Suffice it to say here that we do not agree with defendants' position as to this point.

*Preservation of the Right of Review*

We note initially that, as a procedural matter, the appellant corporations have not preserved for this court's review the question of the sufficiency of the evidence as to the non-obviousness of the Rice Patent. It is established that the sufficiency of evidence to support a verdict is not reviewable on appeal unless a motion for a directed verdict is made in the trial court. 9 *Wright & Miller, Federal Practice and Procedure,* § 2536 (1971). According to Moore, the reasons behind this rule are essentially two. First, the appellate courts will not review issues on appeal that were not properly raised in the trial court. Second, and perhaps more fundamental, the function of the appellate court is to review actions taken by the trial court, not actions of the jury itself. 5A *Moore's Federal Practice,* § 50.05[1]. Put somewhat differently, "a litigant may not gamble on a jury's verdict and then later question the sufficiency of the evidence on appeal. * * [T]he litigant who has not moved for a directed verdict in the trial court must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing his view." *Little v. Bankers Life & Cas. Co.,* 426 F.2d 509, 511 (5th Cir. 1970); see also 9 *Wright & Miller, Federal Practice and Procedure,* § 2536 (1971).

In the instant case, while the defendants did move for a directed verdict, they did not there raise the question of obviousness directly by name or indirectly by concept. That motion was limited to the contention that the Rice Patent was:

"Invalid and/or unenforceable as a matter of law on the grounds that pursuant to 35 U.S.C. § 102(a) and (b), its claimed subject matter was completely anticipated by the prior art, and on the further grounds that it was procured by violation of the uncompromising duty of absolute honesty and full disclosure required of a patent applicant."

Reading the motion liberally so as to avoid the appearance of requiring mere technical precision, we nevertheless are of the view that the motion, when read as a whole, cannot be said to raise any issue as to obviousness.

However, in order to avoid disposition of this matter on so technical a point, we would further note that we are of opinion, as an alternative ground for our decision, that even if the question were properly preserved for review, we would nevertheless find no merit to appellants' contention.

*Level of Ordinary Skill in the Pertinent Art*

As clear as any evidence adduced at trial that the Rice Patent was not obvious within the meaning of § 103 was the response of Kayser-Roth itself to the Rice claim. Shortly after the issuance of his patent in 1958, Rice met with Alfred Slaner and Joe Bird, officials of Kayser-Roth. The purported purpose of this meeting was to attempt to interest Kayser-Roth in producing Rice's garment. Following the meeting, Bird and Slaner promised to evaluate Rice's invention and get back in touch with him.

Instead of getting back in touch with Rice, Kayser-Roth, through a subsidiary, Alamance Industries, filed a patent application for a garment virtually identical to Rice's garment. The only difference was the addition of a crotch piece which Kayser-Roth at that time stated it deemed necessary. According to that application:

"The additional increase in the circumference of the panty portion of the garment provided by the gusset provides a well-fitting garment in the seat, and the reinforced crotch construction provides an adequately strong garment at this point of stress. The result is a practical garment of proper fitting quality, a characteristic which is not otherwise attainable if the edges * * * of the legs are directly secured together throughout their length. This is a result of the fact that a seamless or circularly knit leg construction at the welt * * * does not provide enough material to provide a panty properly proportioned to be practical and useful."

Thus, even after studying Rice's claim, Kayser-Roth did not believe the U-shaped seam which he advocated was practical or useful, much less obvious.

Tights introduced additional evidence indicating that this initial skepticism on the part of Kayser-Roth was shared by others in the industry until the mid-1960's. According to the testimony of one Peel, a hosiery expert, it was not until 1966 that Hanes Hosiery Co., with whom he was employed, discovered that panty hose made with Rice's U-seam would work. Peel testified that he found this to be "amazing" since he and others at Hanes were convinced "that a panty hose couldn't be a totally satisfactory garment if the underwear part of it, the panty, did not include a gusset piece."

■ Additional evidence was adduced at trial indicating that it was not until 1967 that Kayser-Roth itself began developing U-seamed panty hose. Moreover, other evidence established that as late as 1969 appellant Acme-McCrary was still experimenting with this type of garment. Such evidence clearly tends to show that artisans in Rice's field in 1958 did not find his claim to be obvious in view of the prior art at the time of the patent application. *United States v. Adams,* 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

### Differences in the Prior Art

We also are of opinion that there was sufficient evidence to support the jury's determination that differences existed between Rice and the cited prior art references so as to render it non-obvious.[8] As has been noted, the evidence presented at trial clearly indicated that each of the prior art forms relied upon by the defendants, viewed in the light most favorable to Tights, taught that extra fabric was required in the crotch area, whether by an additional separate piece or by additional fabric or knitting. What is apparent from this is that every single reference relied upon by the defendants, rather than being close to, or teaching, or leading to, Rice's concept of fine gauge circularly knit stockings joined with a U-shaped seam, teach in the opposite direction. They do not suggest Rice; rather, they suggest Rice is impossible.

■ The fact that the defendants' prior art references lead away from Rice, and that even unusually skilled artisans in the field corroborated the negative teachings, is both relevant and persuasive as to the question of non-obviousness. *United States v. Adams,* 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); *Shaw v. E. B. & A. C. Whiting Co.,* 417 F.2d 1097, 1104 (2d Cir. 1969).

### Commercial Success

■ Finally, we note that there was substantial evidence introduced at trial as to the commercial success of the Rice claim. Some twenty-five companies were shown to have taken a license under the Rice Patent. Moreover, as has been indicated, use of the Rice U-seam in the products manufactured by these companies resulted in substantial cost savings for them. The evidence of such commercial success is also relevant to the question of non-obviousness since it indicates the inventive nature of the product. *Shaw v. E. B. & A. C. Whiting Co.,* 417 F.2d 1097, 1105 (2d Cir. 1969); *Otto v. Koppers Co.,* 246 F.2d 789, 799–800 (4th Cir. 1957), cert. den. 355 U.S. 939, 78 S.Ct. 427, 2 L.Ed.2d 420 (1958).

### Conclusion as to Obviousness

■ We, of course, recognize that the incorporation of a U-shaped seam into a circularly knit garment may appear a simple matter, a fact which defendants make much of. Yet, the simplicity of an invention, particularly when viewed with the

---

8. Tights argues that much of the prior art relied upon by the defendants is not within the field in which Rice worked, and, therefore, is irrelevant in determining the question of obviousness. While there may be merit in this assertion, we do not feel called upon to further delineate the scope of the relevant art and decide the question, being of opinion that, even assuming each prior art form cited by appellants as being within the field, the jury was nevertheless justified in its finding.

clarity which hindsight affords, does not negative invention. *Goodyear Tire & Rubber Co. v. Ray-O-Vac Co.,* 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721 (1944). As this court stated in *Allen v. Std. Crankshaft & Hydraulic Co.,* 323 F.2d 29, 34 (4th Cir. 1963), "[T]he Court should not convert its simplicity into obviousness. . . ." The mere recital of known elements in the art does not, without more, invalidate a patent under § 103. Rather, the issue must resolve itself on the presence or absence of facts indicating that the bringing together of those elements would have been obvious at the time the patent application was made. *Shaw v. E. B. & A. C. Whiting Co.,* 417 F.2d 1097, 1105 (2d Cir. 1969). We are of opinion, that, based upon the scope and content of the prior art, the differences in that prior art and Rice and the level of skill in the art, the jury's determination as to obviousness was fully supported by the record.

## II

### SUBMISSION OF OBVIOUSNESS QUESTION TO JURY

The defendants next contend that the district court erred in submitting Interrogatory # 4, dealing with the question of obviousness, to the jury. While we agree that the question of obviousness is ultimately one of law, we nevertheless recognize that it involves underlying questions of fact. *Graham v. John Deere,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965); *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976).

As this court has previously noted, the formulation of issues is a matter resting in the sound discretion of the trial judge. *Norfolk So. Ry. Co. v. Davis Frozen Foods,* 195 F.2d 662, 666 (4th Cir. 1952). This discretion extends not only to the use of special verdicts but also to the form of the submitted interrogatories once such a decision is made, and if an issue presents a mixed question of fact and law, it may be submitted if the jury is instructed as to the legal standard to be applied. *Scott v. Isbrandtsen Co.,* 327 F.2d 113 (4th Cir. 1964). It follows then, that our review of the form of the trial court's special interrogatories is confined to whether their use in that form was an abuse of discretion. Accord *Abernathy v. So. Pac. Co.,* 426 F.2d 512, 514 (5th Cir. 1970).

As the court noted in *Dreiling v. General Electric Co.,* 511 F.2d 768 (5th Cir. 1975), there are several factors to be considered in determining the adequacy of the form of special interrogatories: (1) whether the interrogatories adequately presented the contested issues to the jury when read as a whole and in conjunction with the general charge; (2) whether submission of the issues to the jury was fair; and (3) whether the ultimate questions of fact were clearly submitted to the jury. Judged in light of these standards, we find no error in the submission of Interrogatory # 4 to the jury.

In charging the jury on the law governing the question of obviousness, the trial judge stated in part:

> "[Y]ou must consider three things. First, you must satisfy yourselves as to what is the scope and content of the prior art that was pertinent to the claim of the Rice Patent. . . . Second, you must determine the differences between the subject matter sought to be patented by Rice, and the prior art. Finally, you must satisfy yourselves as to the level of skill of a man of ordinary skill in the art to which the subject matter of the Rice patent is most nearly pertinent." [9]

---

**9.** In this connection, the trial judge further instructed in part:

> "To obtain [sic] *you in determining those facts relevant to the question of obviousness, you may consider such secondary considerations as the commercial success or failure of the Rice garment, any skepticism or disbelief that might have been exhibited by members of the industry as to whether the Rice gar-*

ment would work, the fact that some manufacturers have become licensed under the patent, and such other considerations as you may find from the evidence reflecting upon the obviousness or non-obviousness of the subject matter of the Rice patent as a whole."

We find these instructions to be in accordance with *Graham* and *Sakraida*.

These instructions are in accordance with the criteria laid down by the Supreme Court in *John Deere,* and the defendants do not in any way contend that they were erroneous. Rather, it is their position that the district court erred in not requiring the jury to specifically address these underlying factual questions. They argue that the jury should have been requested to determine separately the scope and content of the prior art, the differences between that prior art and the claim at issue, and the level of ordinary skill in the pertinent art, rather than having the question put to them as it was under proper instruction as to the various factors to consider.

We disagree. Our rules do not contemplate that a jury must be asked to make the kind of detailed findings of fact which FRCP Rule 52(a) requires of a judge sitting without a jury. Accord *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.,* 468 F.2d 225, 227–8 (7th Cir. 1972), cert. den. 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973). Defendants requested interrogatories would have merely required the jury to elaborate on its decision as to the issues. We are of opinion, however, that nothing would be gained by requiring the jury to resolve numerous issues where a broader interrogatory, when answered, would be sufficient to determine the rights of the parties. Cf. 9 *Wright & Miller, Federal Practice and Procedure,* § 2506 (1971). It would be a purposeless restriction to say, as defendants urge, that special interrogatories such as that submitted here cannot be mixed questions of law and fact. We have previously decided this question to the contrary. *Scott,* supra.

We are convinced that, viewed in their entirety, the instructions adequately explained the legal standards which the jury was to apply; that the jury understood the questions submitted to it; and that as a result the submission of Interrogatory # 4 was not error. Moreover, we are of opinion that the question asked of the jury was sufficient to obtain a jury determination of the underlying factual issues essential to the judgment, *R. H. Baker & Co. v. Smith-Blair, Inc.,* 331 F.2d 506 (9th Cir. 1964).

### III

### ERRORS AS TO THE ADMISSIBILITY OF EVIDENCE

Finally, the defendants urge that the district court committed various errors at trial which require reversal of the judgment below. Only one of these warrants extended discussion.

The defendants seek to reverse the jury's determination of the facts underlying the judgment that fraud was not committed on the Patent Office in the procurement of the Rice Patent. Specifically, they contend that the trial court erred in not permitting them to cross-examine Rice's attorney at the time of the reissue application regarding his financial interest in the patent itself. This, they argue, would have established a motive for his alleged failure to bring the Sutton Patent to the attention of the Patent Office.

The jury specifically found, however, that the Sutton Patent was, in fact, brought to the attention of the Patent Examiner reviewing the Rice application. Moreover, there is substantial, it even might be said to be overwhelming, evidence to support this finding. The Rice filewrapper itself indicates that Rice's attorney informally presented to the Examiner in charge certain newly discovered prior art references which had come to his attention as a result of other litigation in which he was involved. Among those references was the Sutton Patent. The filewrapper further discloses that, while the Examiner did not cite Sutton as pertinent prior art, he did search the patent classification where Sutton was to be found. This evidence stood uncontradicted at the time the defendants sought to cross-examine Rice's attorney as to his interest in the patent.

While it is true that a witness may ordinarily be cross-examined as to his financial interest in a transaction, it is also

recognized that the trial judge has broad powers to regulate the nature and extent of such cross-examination. See, e. g., *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Here, the evidence was all but conclusive as to the fraud issue, and against the defendants. As such, defendants' line of inquiry could easily be said to border on harassment of the witness which the trial judge, in his discretion, was entitled to limit.[10] *Alford* at 694, 51 S.Ct. 218. In light of the evidence already in the record, we are of opinion that the ruling of the district court was not an abuse of discretion, and if it could be said to be error at all, did not prejudice the defendants' case, and does not warrant reversal.

We have examined the remaining issues raised by the appellants regarding the conduct of the trial and the instructions to the jury and find them to be without merit.

CONCLUSION

■ We are of opinion that the jury was properly instructed as to the applicable law regarding the issues before it and that its findings were amply supported by the evidence. Accordingly, we are of opinion that the judgment of the district court was free from error and it is

*AFFIRMED.*

---

**10.** We also note that the trial judge offered to allow defendants to call the witness as their own, an option which they declined.