**KABUSHIKI KAISHA AUDIO–TECHNI-CA, a corporation of Japan, Appellee,**

v.

**ATLANTIS SOUND, INC., a Delaware Corporation; Nippon Atsudenki Kabushiki Kaisha t/a Japan Piezo Company, Ltd., Appellant.**

No. 79–1342.

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1980.

Decided Sept. 17, 1980.

Richard Linn, Washington, D. C. (Wender, Murase & White, Washington, D. C., Andrew J. Richardson, Littlepage, Quaintance, Murphy, Richardson & Webner, Arlington, Va., Jerry Cohen, Pollock, O'Connor & Gadsby, Waltham, Mass., on brief), for appellant.

Donald L. Welsh, Chicago, Ill. (Fitch, Even & Tabin, Chicago, Ill., Harrison E. McCandlish, LeBlanc, Nolan, Shur & Nies, Arlington, Va., on brief), for appellee.

Before BUTZNER, HALL and SPROUSE, Circuit Judges.

BUTZNER, Circuit Judge:

█ Atlantis Sound, Inc., and Japan Piezo Co., (Atlantis) appeal from a judgment of the district court holding that the stereo cartridge produced and sold by them infringed claim 1 of Patent No. 3,761,647 and claims 1, 2, 3, and 5 of Patent No. 4,075,418. Both patents are held by Kabushiki Kaisha Audio–Technica (Audio).[1] Because the subject of the claims is obvious, as defined by 35 U.S.C. § 103, we reverse the judgment of the district court.

1. Although two patents are involved, only one invention is at issue. Patent No. 3,761,647 was issued on September 25, 1973. Patent No. 4,075,418 was issued on February 21, 1978, as a continuation in part of an application that was abandoned and as a division of the '647 patent.
   Audio filed a disclaimer on October 16, 1978, with the Patent Office for that portion of patent '418 that extends beyond September 25, 1990, the term of the '647 patent.

2. Claim 1 of the '647 patent is representative:
   An electromagnetic stereophonic pickup cartridge for stereophonic reproduction of sound from a record groove having individual sound recordings disposed according to the 45 [degrees]-45 [degrees] system, comprising
   electromagnetic generating means having two independently variable magnetic air gaps located at opposite sides of an imaginary first vertical plane and aligned in an imaginary second vertical plane transverse to said first plane;

The patents relate to a stereophonic, electromagnetic pickup cartridge for reproducing sound from a phonographic record. Among other things, they claim two kinds of stylus assemblies. The first is called by Audio a piano wire type of assembly. For the purposes of this case, it is sufficient to note that this type consists of several separate elements including a cantilever arm that holds the stylus at one end, a fulcrum wire made of relatively thin piano wire that is banded to the cantilever arm and an anchor or mounting pipe, and armatures that are secured to the rear end of the cantilever. This type of assembly is depicted together with the subject matter of other claims in figures 12 and 13 of the '647 patent and figures 10 and 11 of '418 patent.

Audio calls its second stylus assembly a unitary mold type. As defined by the claims at issue[2] and depicted by figure 14 of the '647 patent and figure 12 of the '418 patent, it consists of a unitary, synthetic plastic resin mold for mounting the armatures and cantilever arm in the cartridge.

Initially, Audio charged infringement of all claims of both patents. During this litigation, it became apparent that the subject matter of claims depicted in figures 12 and 13 of the '647 patent and 10 and 11 of the '418 patent, including the piano wire type stylus assembly, were shown by prior art that was known to Audio but not dis-

a cantilever arm having one end portion provided with a stylus, another end portion, and a longitudinal axis coincident with said first plane;
magnetic armature means carried by said other end portion and being located in said second plane;
magnetic means fixedly mounted proximal to said armature means for magnetizing the same; and
mounting means engaging said other end portion of said cantilever arm and mounting the same for movement in more than one plane at substantially equal degrees of restraint about a fulcrum which is located at least proximal to said second plane;
said mounting means comprising an elongated flexible portion and an armature carrying portion, said portions of said mounting means being unitary and composed of synthetic plastic resin material.

closed to the Patent Office. Consequently, Audio concedes that its charge of infringement is limited to claims for the unitary mold type of stylus assembly.[3]

The district court reasoned that the crux of the case is the difference between the piano wire assembly depicted in figure 13, admitted to be prior art, and the unitary mold described by figure 14. The court found that replacing five components of the piano wire assembly with a single plastic device resulted in economy, simplicity, and uniformity of manufacture and replacement. It concluded that the construction of a unitary piece that performed the functions of multiple pieces was not obvious. Accordingly, it held the claims valid and infringed.

■ A new and useful device must be a non–obvious improvement over prior art to warrant a patent. 35 U.S.C. § 103.[4] *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), explains the inquiry a court must undertake to decide whether a patent is obvious:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.

■ Although the underlying factual decisions of the district court are entitled to great weight, the ultimate question of obviousness under § 103 is one of law. *Tights, Inc. v. Acme–McCrary Corp.*, 541 F.2d 1047, 1060 (4th Cir. 1976).

The scope and content of the prior art are best illustrated by Patent No. 3,230,317 issued to August Freise in 1966. Freise's invention relates to the coupling arrangement for the stylus carrier in a stereo phonograph. Like the Audio patents, it discloses two types of stylus assemblies. The first consists of a number of separate components. The district court observed that this is in many respects similar to the piano wire assembly shown in figure 13 of Audio's '647 patent. The district court was under the mistaken impression that Freise did not also show a unitary assembly.

Freise, like Audio, explicitly discloses a second type of assembly in which the components are molded into a unitary part. The unitary mold type is depicted in figure 2 of Freise's patent and described as follows: "In the embodiment of FIGURE 2, the stylus carrier *10*, the holding element *11*, the cylindrical mounting element *12*, and the position adjusting handle *13* are all molded into one integral part."

Furthermore, contrary to the district court's analysis, the crux of this case is not simply the differences between the piano wire assembly disclosed by figure 13 of Audio's '647 patent and the unitary mold type of assembly illustrated by figure 14. Section 103 dictates that the "subject matter as a whole" must be taken into consideration in determining obviousness. Here the subject matter as a whole is not limited to the differences between a piano wire assembly and a unitary mold assembly. The scope and content of the prior art, as revealed by Freise, embrace the fabrication of alternative types of assemblies to serve the same purpose. It is this disclosure that is primarily relevant.

Returning to the test prescribed by *Graham*, 383 U.S. at 17, 86 S.Ct. at 693, we must next ascertain the differences between the prior art and the claim at issue. Although the Freise patent related to a crystal cartridge instead of a magnetic cartridge, Audio's expert considered it the most relevant reference. Both Freise and

---

**3.** Audio filed a disclaimer in the Patent Office on August 14, 1979, of claims 2, 3, and 6 of the '647 patent and claims 6, 7, 8, 9, 10, 11, 12, and 13 of the '418 patent.

**4.** Section 103 reads in part as follows:
> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. . . .

Audio disclose two types of stylus assemblies. The first is composed of separate components crimped or bonded together; the second uses a unitary mold to replace a number of the separate components. The purpose of the four assemblies is essentially the same—to enable the stylus and its associated parts to respond to the configurations of the grooves of a phonographic record so the recorded music can be reproduced. In the limited context of this case, the differences between Freise and the claims at issue are not substantial.

*Graham*'s final criterion is resolution of "the level of ordinary skill in the pertinent art." 383 U.S. at 17, 86 S.Ct. at 694. Testimony disclosed that cartridge design for the reproduction of sound is recognized as a specialized skill which is not taught as a separate course in any school. Designers acquire the skill by working for cartridge manufacturers. Some have no college education, but typically they have bachelor's or master's degrees in electrical or mechanical engineering. The Freise patent is indicative of the level of skill in the art. The designer, having constructed a stylus assembly from several components, recognized that the same results could be achieved by substituting a unitary plastic mold for several of the components.

In sum, we conclude that the differences between the unitary mold type of stylus assembly defined in the claims at issue and the prior art shown in the Freise patent by its disclosure of a unitary mold type of stylus assembly demonstrate that the subject matter of the Audio patents would have been obvious to a person having ordinary skill in the art. In reaching this conclusion, we have given due consideration to the presumption of validity to which the Audio patents are entitled, especially since Freise was cited by the examiner. This presumption, however, is not conclusive. *St. Regis Paper Co. v. Bemis Co., Inc.*, 549 F.2d 833, 838 (7th Cir. 1977). Here the presumption has been rebutted by compelling evidence that the subject matter of the claims is obvious. This evidence includes conclusive proof that the most comprehensive claims that the Patent Office allowed were, in fact, disclosed by prior art.

In view of our conclusion, it is unnecessary to consider whether Audio's patents are invalid for failure to disclose the best mode as required by 35 U.S.C. § 112. Also, we find no occasion to remand the case to the district court, as Atlantis requests, for determination of the issues raised in its counterclaim concerning the validity of all of Audio's claims. Audio's disclaimer, which is mentioned in note 3 *supra*, and the fact that it asserts no infringement of claims other than those we have held invalid makes remand for proceedings on the counterclaim unnecessary.

The judgment of the district court is reversed, and the case is remanded for the entry of an order declaring that claim 1 of U.S. Patent No. 3,761,647 and claims 1, 2, 3, and 5 of U.S. Patent No. 4,075,418 are invalid.