**The BLACK AND DECKER MANUFAC-TURING COMPANY and Tekron Licensing, B.V., Plaintiffs-Appellees,**

v.

**SEARS, ROEBUCK AND COMPANY, Defendant-Appellant.**

No. 81–1418.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 4, 1982.

Decided June 9, 1982.

Henry J. Zafian, New York City (Fish & Neave, New York City, Allen Kirkpatrick, Cushman, Darby & Cushman, Washington, D. C., on brief), for defendant-appellant.

Don K. Harness, Birmingham, Mich. (Robert L. Boynton, Harness, Dickey & Pierce, Birmingham, Mich., Edward D. Murphy, Towson, Md., Francis J. Hone, Richard G. Berkley, Brumbaugh, Graves, Donohue & Raymond, New York City, on brief), for plaintiffs- appellees.

Before HALL and MURNAGHAN, Circuit Judges, and WILKINS,* District Judge.

PER CURIAM:

This is an appeal from judgment of the District Court awarding damages of $86,500.00 against Sears, Roebuck and Company for infringement of United States Letters Patent Nos. 3,615,087 and 4,076,229. These patents, owned by Tekron Licensing, B.V. and licensed exclusively to Black and Decker Manufacturing Company, constitute what is commercially known as the "Workmate" workbench. This case was tried to a jury which found both patents to be valid and infringed by the Sears "Work Buddy" workbench. Sears argues that the trial judge erred in his instructions to the jury and that the Workmate patents are invalid for obviousness under 35 U.S.C. § 103. We disagree and, accordingly, affirm the judgment of the District Court.

### JURY INSTRUCTIONS

Sears contends that the trial judge committed reversible error by instructing the jury: "[Y]ou may consider matters such as an item's use, size, proportions, or the like in deciding whether an item of prior art relied upon in this case is, or is not analogous prior art." Sears also contends that the judge erred in failing to give its requested instruction: "If a feature is not recited in the claim, you may not read that absent feature into the claim from the specification or from another claim." Neither of these positions has merit.

■ Use, size or proportion may be considered in deciding what is analogous art. It is undisputed that analogous art is that field of art to which a person of ordinary skill in the art would have been apt to refer in attempting to solve the problem solved by a proposed invention.[1] All parties agree that the person of ordinary skill in this case is a high school graduate who is good with his hands. The issue which the jury had to resolve was what art or fields of art would such a person have consulted in attempting to solve the problem solved by the Workmate workbench. Logically, this person of ordinary skill would have considered, among other factors, use, size and proportion when searching for analogous devices. Therefore, such factors are relevant to this analysis.[2]

■ Also, the trial judge did not err in failing to instruct the jury that features not included in the claims may not be read into the claims based on the specifications. Instead, the trial judge charged: "It is fundamental that claims of a patent are to be construed in a [sic] light of the specifications and both are to be read with a view to ascertaining the invention." This is an accurate statement of the law applicable to this case. *United States v. Adams*, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). Sears' argument that failure to include its requested instruction may have caused the jury to conclude that the scope of an invention is defined by both the claims and the specifications is not well-founded. It is implicit in the instruction given (i.e., the *claims* are to be *construed in light of the specifications*) that specifications alone are insufficient to add features to the claims. Instead, the specifications should be considered only for the purposes of interpreting what is already stated in the claims. Therefore, Sears' requested instruction was

* Honorable William W. Wilkins, Jr., United States District Judge for the District of South Carolina, sitting by designation.

1. In defining analogous art to the jury, the trial judge stated: "[A] field of art is not analogous if the person of ordinary skill in the art of the invention would not have been apt to look to the other art for a solution." No objection was taken to this definition and neither party contests its accuracy on appeal.

2. This instruction could not have misled the jury into the mistaken impression that a change in the size or use of a device is sufficient to sustain a patent. The trial judge also instructed the jury: "A mere mechanical improvement over the prior art such as changing the size, weight, or portability of the device does not necessarily amount to invention."

unnecessary to a proper understanding of the law.[3]

## OBVIOUSNESS

Finally, Sears argues that the Workmate patent should have been declared invalid as obvious under 35 U.S.C. § 103 as a matter of law. 35 U.S.C. § 103 states that patent rights may not properly be issued on an invention if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[4] Sears placed six different items of proposed prior art in evidence[5] which it argued rendered the concepts embodied in the Workmate invention obvious to a high school graduate who is good with his hands. Assuming all of these items should be considered relevant prior art, we disagree that the Workmate workbench must be declared obvious as a matter of law.

It is important to note that the United States Patent Office issued both patents on the Workmate after specifically considering much of the prior art now relied on by Sears as evidence of obviousness.[6] Once a patent is issued it is entitled to a strong presumption of validity which may be rebutted only by clear and convincing evidence.[7] *See Tights, Inc. v. Acme-McCrary Corp.*, 541 F.2d 1047, 1053 (4th Cir. 1976), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976); *Gulf Smokeless Coal Co. v. Sutton, Steele & Steele*, 35 F.2d 433, 437 (4th Cir. 1929). The trial jury and the trial judge found specifically that the patents were valid. In reviewing the verdict to determine whether it is supported by sufficient evidence, we must view the record in the light most favorable to Plaintiffs, giving them the benefit of all reasonable inferences. *Tights, Inc. v. Acme-McCrary Corp.*, 541 F.2d at 1055–56. "We may not . . . weigh the evidence, pass on the credibility of witnesses, or substitute our judgment of the facts for that of the jury." *Id.* at 1055.

Applying this standard of review, the verdict should not be disturbed. It is apparent from the record that the Workmate, unlike any of the proposed prior art, is a combination workbench and vise ideal for use by amateur woodworkers and "weekend

---

3. The possibility that the jury may have concluded that the scope of the invention could be limited by features present in the specifications but absent in the claims was even further lessened by the fact that the trial judge also charged: "A patent covers only what is claimed. . . . Neither the specifications nor the drawings of a patent can be infringed, only the patent claims can be infringed."

4. Under *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the issue of obviousness should be analyzed based on this statute by examining (1) the scope and content of the prior art; (2) the differences between the prior art and the claims in suit; and (3) the level of skill of the person of ordinary skill in the art.

   The parties have agreed that the skill in this art is that of a high school graduate who is good with his hands. Assuming that the prior art is that proposed by Sears, all that remains to be considered is the differences between this art and the Workmate workbench.

5. The prior art proposed by Sears is the Fleming patent, the Dominy Museum Piece workbench, the Thomas patent, the Fay & Egan

Clamping Machine, the Hermance Clamping Machine, and the Castagna patent.

6. The Workmate workbench is embodied in two patents. The Thomas, Castagna and Fleming patents were cited by the patent examiner during the prosecution of the application for Patent No. 4,076,229. Patent No. 3,615,087 is basically the same with respect to the claims in suit.

7. We stated in *Tights*, 541 F.2d at 1053–54:
   [T]he burden of proof is on the defendants, and the Rice Patent, having been issued by the Patent Office, is presumed valid. . . . The basis for this presumption was set out by the Second Circuit in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 258 F.2d 124 (2d Cir. 1958), cert. den. 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958), where the court stated: "Expertness and experience in passing upon patents lies primarily in the Patent Office and these important factors are only partially offset by the greater concentration and the additional relevant evidence which can be brought to bear in any particular patent litigation in the courts." *Id.* at 133.

handymen." Also, unlike any of the proposed prior art, its vise mechanism is designed to allow secure clamping of irregular shaped objects through angulation of the vise jaws. Its usefulness in clamping a wide variety of work pieces of different shapes and sizes was demonstrated at trial. None of the proposed prior art is appropriate for performing even a small percentage of these functions.

These facts alone would very likely have been sufficient to sustain the jury verdict. However, further evidence of the validity of the Workmate workbench can be found in its tremendous commercial success. In *Graham v. John Deere Co.*, 383 U.S. at 17–18, 86 S.Ct. at 693, the Court stated: "Such secondary considerations as commercial success ... might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or non-obviousness, these inquiries may have relevancy." In this case the "indicia of nonobviousness" is particularly strong. Since production began on the Workmate in 1968, over 10,000,000 units have been sold worldwide. Over 3,500,000 have been sold in the United States alone, constituting a sales volume of approximately $162,000,000.00. Certainly such commercial success, virtually unparalleled in the industry, makes it highly unlikely that the Workmate is a device which would "have been obvious ... to a person having ordinary skill in the art" when patented in 1971.

Based on the entire record, we find no reason for disturbing the judgment of the District Court.

AFFIRMED.