789 F.2d 269
 20 Fed. R. Evid. Serv. 419, Prod.Liab.Rep.(CCH)P 11,043
William G. NEWMAN to his own use and to the use of Employers
of Wausau Insurance Company and William G. Newman and
Bernice M. Newman, jointly and as Husband and Wife, Bong D.
Yang, to his own use and to the use of Employers of Wausau
Insurance Company, and Hong Yang, Appellants,
v.
HY-WAY HEAT SYSTEMS, INC., and Stansteel Corporation, Appellees.
 No. 85-1766.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 7, 1986.
Decided Feb. 28, 1986.
 
 1
 David N. Kuryk, Lutherville, Md., for appellants Bong D. Yang, et al. Steven T. Cain (Newland H. Bush, Giordano, Bush, Villareale & Vaughan, P.A., Upper Marlboro, Md., on brief), for appellants William G. Newman, et al.
 
 
 2
 Benjamin R. Goertemiller (James F. Mewborn, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee Stansteel Corp.
 
 
 3
 Stephen B. Caplis (H. Russell Smouse, Kenneth D. Pack, Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, Md., on brief), for appellee Hy-Way Heat Systems, Inc.
 
 
 4
 Before RUSSELL and SNEEDEN, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.
 
 SENTELLE, District Judge:
 
 5
 Plaintiffs in this personal injury action appeal from directed verdicts in favor of the defendants on claims of negligence and strict liability, alleging several errors centering around the trial court's striking of the testimony of plaintiffs' sole expert witness and the sufficiency of the evidence with or without that testimony. Finding no merit in any of these assignments, we affirm.
 
 
 6
 Plaintiffs Bong Yang and William Newman were a workman and supervisor, respectively, at an asphalt plant. On the occasion in question, they undertook to clean an asphalt strainer connected with the asphalt circulation portion of the plant. This strainer was part of a system consisting of two storage tanks, a strainer, an asphalt pump and motor, three valves, and a jacketed connecting pipe. The circulating asphalt is maintained at approximately 325 degrees Fahrenheit. Before cleaning the strainer, employees must open the valve below the strainer to relieve pressure. While the testimony is in conflict, taking it in the light most favorable to the plaintiffs Newman opened the valve before he and Yang opened the top of the strainer to clean it. Nonetheless, the asphalt therein apparently was under pressure from some source, as hot asphalt sprayed out seriously injuring both plaintiffs.
 
 
 7
 The only evidence offered by plaintiffs concerning the cause of the pressure and, therefore, the resultant accident came from an expert witness. This witness testified that by examining the spray pattern of asphalt droplets on the surrounding area of the plant he was able to determine the amount of pressure on the liquid asphalt. He further testified that in his opinion the only way the accident could have happened was for someone to enter the control room 60 feet away from the strainer and turn the motor on in reverse. However, all plaintiffs' other evidence is to the effect that the only person who had been in the control room left minutes before the accident after having turned off the switch. Plaintiffs' evidence also is all to the effect that the machine was never operated in reverse but only forward, and that to reverse the direction of flow required turning a switch to a completely opposite position (turning the switch off placed it in a middle position) and pushing a button. Neither the expert nor any of plaintiffs' other witnesses could offer any way that this could have been done inadvertently nor did any of them testify as to anyone going into the closed control room from the time the switch was turned off until after the accident. No witness ever testified to seeing the switch in a reverse position. All eyewitnesses testified that they had not heard the machine come on at anytime during the events. All also testified that the machine could not come on without their hearing it. Plaintiffs' expert theorized that the pump motor had been energized in reverse either "inadvertently," "as a prank," or "as a malicious act," and that the sound of the motor might have been missed or forgotten in the excitement of the accident. The trial court, holding that the expert's theorizing was no more than that, struck his testimony as being based on speculative assumption rather than evidence in the case.
 
 
 8
 It is fixed law that "an expert can give his opinion on the basis of hypothetical facts, but those facts must be established by independent evidence properly introduced." Logsdon v. Baker, 517 F.2d 174 (D.C.Cir.1975). See also Horton v. W.T. Grant Co., 537 F.2d 1215 (4th Cir.1976); and United States v. 319.88 Acres of Land, 498 F.Supp. 763, 766 (D.Nev.1980). While the cases dealing with this subject generally arose before the adoption of the Federal Rules of Evidence, and specifically before the adoption of Rule 703 codifying and arguably liberalizing the bases of opinion testimony by experts, nothing in the Rules appears to have been intended to permit experts to speculate in fashions unsupported by, and in this case indeed in contradiction of, the uncontroverted evidence in the case. The witness' opinion as to causation here constitutes no more than such speculation, and the trial court did not abuse its discretion in striking the same. Cf. Logsdon v. Baker, supra.
 
 
 9
 In any event, the striking of the testimony would not have been prejudicial even had it been erroneous, as plaintiffs' evidence simply is not sufficient to go to a jury with or without the testimony of the disputed expert. Plaintiffs' theories of liability, couched both in terms of negligence and strict liability, revolve around a hub formulation that the asphalt plant in this case was designed in a fashion foreseeably causative of injuries of the sort occurring here. However, the plaintiffs failed to establish requisite causation between their injuries and the system. Briefly summarized, this hub depends on the following analysis of the facts.
 
 
 10
 The area of the asphalt strainer which had to be cleaned was not visible from the control room for the operational parts of the plant. There was not a "lock-out" device in the immediate area of the screen whereby employees could turn off and lock out the pump and motor while the cleaning was underway. There were no safety warnings in the immediate area of the screen cautioning of the possibility of accidents such as the one that occurred here. Defendant Hy-Way Heat Systems, Inc. designed and manufactured the strainer. Defendant Stansteel Corporation designed and built the plant incorporating the strainer. Therefore, those defendants are responsible for the injuries which occurred from its operation.
 
 
 11
 While some of plaintiffs' assumptions in this analysis are open to question (for example, the evidence indicates that warning signs were present though not worded exactly to relate to this incident and that the switch box controlling the plant was subject to the same use as a lock-out device) even if all are taken in the light most favorable to the plaintiffs, the conclusion simply does not follow from the assumptions. On this point, the facts here are strikingly similar to and governed by the decision of this court in Marshall v. H.K. Ferguson Co., 623 F.2d 882 (4th Cir.1980). In that case as in this, production workers were attempting to clean a clogged production machine (in that instance, relating to the brewing of beer). In that case as in this, pressure which ought to have been relieved wasn't and the plaintiff was scalded by escaping high pressure emission (in that instance, steam and hot water). In that case as in this, the injured party sued the manufacturer of the machinery in question. In upholding a directed verdict in favor of the manufacturer, this court stated:
 
 
 12
 We agree with the district court that the plaintiff failed to make out a prima facie case under [his] theory of liability. There is no evidence whatever that the [machine] contained any defect. Indeed the evidence showed that the machine operated precisely as it was designed to do.... [P]laintiff's unfortunate injury was not caused by any defect inherent in the design or the construction of the [machine], but resulted from the procedures followed by the employees of [plaintiff's employer] in their attempt to locate and relieve the clog in the disposal system.
 
 
 13
 Id., at 885. While plaintiffs' evidence here may not demonstrate as clearly as did Marshall's that the injury was the result of the procedures followed by employees, neither does it offer any support for the proposition that the injury was the result of any negligence of the manufacturer or builder or the result of any defect or inherent danger in their product. Appellants cite Troja v. Black and Decker Mfg. Co., 62 Md.App. 101, 488 A.2d 516 (1985), for the proposition that Maryland law would impose strict liability in this situation. While that case contains an interesting discussion of and no doubt the authoritative opinion on the Maryland law in the area of strict liability, nothing in the opinion or in appellants' argument based on the opinion supports the proposition that the Maryland law of strict liability compels any other decision than that reached by the court below.
 
 
 14
 Plaintiffs raise several other evidentiary arguments, none of which disclose either error or prejudice. Finally, plaintiffs assert that upon striking the expert's testimony the court below should have permitted plaintiffs to reopen their case for the possibility of offering testimony from other experts. This assignment is totally valueless. Plaintiffs never moved or otherwise asked the court below for an opportunity to reopen their case. "Questions not raised and properly appealed in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances." United States v. One 1971 Mercedes Benz, 542 F.2d 912 (4th Cir.1976) (citations omitted). Even had the question been raised below, it cannot conceivably constitute prejudicial error for the judge to have denied the motion since plaintiffs have never, either in pretrial discovery, in response to the pretrial order, or in anything produced before this court, indicated the existence of any other expert.
 
 
 15
 There is, therefore, no error in the proceeding below. Consequently, the decision is
 
 
 16
 AFFIRMED.