856 F.2d 187
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Judith A. TORNEY, in her individual capacity, and as the
personal representative of the estate of Gregory Allen
Torney, deceased, as the parent, guardian and next friend of
Jennifer L. Torney and Christopher A. Torney, minor children
of Gregory Allen Torney, deceased, Mary Nicely, grandmother,
guardian, and next friend of Andrew A. Torney and Matthew A.
Torney, minor children of Gregory Allen Torney, deceased,
Plaintiffs-Appellants,
v.
Corporal Michael J. MILES, individually and in his official
capacity, Trooper Debra J. Fletcher, individually and in her
official capacity, Trooper Brent J. Hayes, individually and
in his official capacity, First Lieutenant Jessie Graybill,
individually and in his official capacity, First Lieutenant
Leonard A. Potts, individually and in his official capacity,
Colonel Wilbert T. Travers, individually and in his official
capacity, Defendants-Appellees.
 No. 87-1668.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 2, 1988.
Decided Aug. 23, 1988.
 
 Michael V. Kuhn (Newland H. Bush, Giordano, Bush, Villareale & Vaughan, P.A. on brief) for appellants.
 James Joseph Doyle, III, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General on brief) for appellees.
 Before HARRISON L. WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Gregory Allen Torney died while in the custody of the Maryland State Police, apparently a suicide. This suit was filed under 42 U.S.C. Secs. 1983, 1985 and 1988 by his widow, Judith A. Torney, and Mary Nicely, the grandmother of children born to the decedent in his first marriage. Plaintiffs sought redress for Torney's death, alleging that the state police were negligent in allowing the decedent to kill himself or, in the alternative, that they murdered or accidentally killed Torney and then staged a fake suicide scene. Defendants, state police officers named in their individual and official capacity, moved for summary judgment. The district court granted the motion.
 
 
 2
 Plaintiffs appeal and we affirm.
 
 I.
 
 3
 On June 1, 1985 at 3:45 a.m., state police trooper, Brent Hayes, arrested the deceased for driving while intoxicated. Trooper Hayes took Torney to the police station. The police searched Torney.
 
 
 4
 Defendants presented evidence in their affidavits in support of summary judgment that the deceased decided, upon arrival at the Waldorf Barracks of the state police, to consult with his attorney before taking the breathalyzer test. He was allowed to call his attorney, Newland H. Bush, Esq., and then at approximately 4:15 a.m. placed in a detention cell. According to defendants' affidavits, Troopers Hayes and Debra J. Fletcher repeatedly looked in on Torney. In her affidavit, Trooper Fletcher states that at 4:55 a.m., she looked into the deceased's cell and saw his body hanging motionless, suspended by an electrical cord about his neck.
 
 
 5
 Defendants presented evidence that they lifted Torney's body up and turned it to untwist the cord and remove the body from the noose. An ambulance was summoned, and defendants administered cardiopulmonary resuscitation before the Waldorf Rescue Squad arrived.
 
 
 6
 The medical examiner found that Torney had died of hanging. In his autopsy report, the medical examiner found no evidence of assault on Torney, no evidence of manual strangulation, and no evidence of any other injuries.
 
 
 7
 Plaintiffs contend on appeal that (1) the district court erred in granting summary judgment because material facts were in dispute; (2) the district court erred in ordering plaintiffs' attorney to withdraw; and (3) the district court abused its discretion in ruling before discovery was completed.
 
 II.
 
 8
 Plaintiffs advance several arguments in support of their contention that there is a genuine dispute as to how Torney died in police custody.
 
 
 9
 They argue that there is a discrepancy between photographs taken at the scene of death and the testimony of Corporal Michael J. Miles. Miles testified that defendants turned Torney's body so as to untwist the electrical cord and lift his body out of the noose, although Miles did not testify as to whether the noose was completely untwisted before defendants were able to slip Torney's head through the electrical cord. Plaintiffs argue that photographs taken at the scene demonstrate that after medical assistance arrived, the noose was in a fully twisted position. Upon examination of the photographs, we do not perceive a genuine discrepancy in the evidence. The photographs reveal that the electrical cord remained in a noose shape but had only two revolutions upon itself. This is consonant with what defendants would do under their version of the facts: untwist the cord only until Torney's body could be removed, but no further. Mindful that plaintiffs are entitled to have inferences drawn in their favor, we nonetheless do not perceive a discrepancy in evidence upon which a reasonable jury could conclude that the suicide scene was a cover-up.
 
 
 10
 Plaintiffs also contend that photographs of the deceased's body reveal marks on Torney's neck indicating that he was assaulted by the police. In support of this theory, they quote from a treatise on the location of ligature marks in hangings. The treatise on which plaintiffs rely does not contradict evidence of hanging in this case. It states that ligature marks in hanging do not lie in a completely horizontal position, but slant upward. This is what the photographs reveal, and, contrary to plaintiffs' suggestions, the autopsy report does not contradict the photographic evidence.
 
 
 11
 Finally, plaintiffs argue that the reconstruction of the scene by their expert witness, a mechanical engineer, demonstrates that if Torney had committed suicide, the wood moldings in his holding cell would not have withstood his weight. They contend therefore that the reconstruction adequately supports their theory that the police killed Torney and then made his death look like a suicide.
 
 
 12
 As the district court found, plaintiffs' reconstruction of the scene of death was not shown to involve materials which reliably duplicated conditions and physical attributes of the detention cell. The district court correctly concluded that the laboratory reconstruction was therefore only a speculative demonstration; the molding, frame and staples, were not shown to be identical with materials in the actual holding cell. See Newman v. Hy-Way Heat Systems, Inc., 789 F.2d 269 (4 Cir.1986). Thus, a reasonable jury could not rely upon the demonstration to conclude that Torney was accidentally or intentionally killed by defendants.
 
 
 13
 In sum, we do not think that the evidence presented by plaintiffs was sufficient to create a genuine dispute as to how Torney died. The undisputed evidence was that he died by his own hand.
 
 III.
 
 14
 Plaintiffs contend that the district court improperly ordered their attorney to withdraw. Bush had arrived at the Waldorf Barracks (in response to Torney's phone call for advice on whether to take the breathalyzer test) at or shortly before the time that Torney's body was discovered in the cell. Plaintiffs sought to depose Bush, and Bush moved for a protective order. The court ordered that oral deposition of Bush could proceed, and without specifically requiring Bush to withdraw from the case, opined that "to avoid last-minute problems in this case, I would suggest that another attorney from Mr. Bush's firm be brought into the case immediately on the plaintiffs' behalf." A. 110. It did not abuse its discretion in suggesting that Bush withdraw in light of his personal knowledge of relevant facts and the likelihood that at trial, he would be a witness.
 
 IV.
 
 15
 Plaintiffs' last major argument is that the district court abused its discretion in ruling on the summary judgment motion before they could depose defendant Fletcher. The district court had entered a scheduling order on November 7, 1986, requiring that "[d]epositions and all other discovery shall be completed by March 7, 1987." A. 42 (emphasis in original). It twice granted plaintiffs extensions of time in which to complete discovery. Rule 56(f), F.R.Civ.P., provides that summary judgment should be refused "where the nonmoving party has not had the opportunity to discover information essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 n. 5 (1986). In this case, plaintiffs had ample opportunity to reschedule Fletcher's deposition, notwithstanding the change in plaintiffs' counsel. There was therefore no abuse of discretion.
 
 
 16
 AFFIRMED.