878 F.2d 1430
 28 Fed. R. Evid. Serv. 850
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Patricia Ann McDOUGALL, individually as the widow of Charles
Raymond McDougall, Jr., Charles Raymond McDougall, III, by
his mother and next friend, Patricia Ann McDougall, Steven
Eugene McDougall, by his mother and next friend, Patricia
Ann McDougall, Plaintiffs-Appellees,
and
Pennsylvania Manufacturer's Association Insurance Company, Plaintiff,
v.
CATERPILLAR, INCORPORATED, Defendant-Appellant.
Patricia Ann McDOUGALL, individually as the widow of Charles
Raymond McDougall, Jr., Charles Raymond McDougall, III, by
his mother and next friend, Patricia Ann McDougall, Steven
Eugene McDougall, by his mother and next friend, Patricia
Ann McDougall, Plaintiffs-Appellants,
and
Pennsylvania Manufacturer's Association Insurance Company, Plaintiff,
v.
CATERPILLAR, INCORPORATED, Defendant-Appellee.
 Nos. 88-1536, 88-1537.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1988.
Decided July 5, 1989.
 
 Kenneth S. Broun (Petree, Stockton & Robinson, Robert E. Powell, Raymond G. Mullady, Jr., Gregory J. Psoras, Smith, Somerville & Case, on brief) for Appellant/Cross-Appellee.
 Peter N. Munsing (Hy Mayerson, Mayerson, Gerasimowicz & Munsing, P.C., James Brewster Hopewell, Gaegler & Hopewell, on brief) for appellees/cross-appellants.
 Before ERVIN, Chief Judge, and K.K. HALL and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Charles McDougall was killed in an accident at his place of work when a forklift manufactured by the defendant-appellant, Caterpillar Inc., ran over him. McDougall's widow and two sons brought this diversity action against Caterpillar alleging negligent design, breach of warranty and products liability. The case went to trial before a jury which heard almost three weeks of testimony. The jury found for the plaintiffs and awarded $677,000 in damages. Caterpillar now appeals from the trial court's denial of its motions for a directed verdict and judgment n.o.v. Caterpillar also alleges error in several evidentiary rulings. McDougall cross-appeals from the trial court's refusal to submit the issue of punitive damages to the jury. Finding no merit in any of these contentions, we affirm.
 
 THE ACCIDENT AND THE EVIDENCE
 
 2
 McDougall, an experienced forklift operator, was employed at Betco Block & Products, Inc., in Montgomery County, Maryland, from 1975 until the day of his tragic accident. On the morning of June 23, 1982, shocked coworkers found McDougall's body trapped underneath the forks of a Caterpillar V140 lift truck. He was last seen, only minutes before, operating the forklift in Betco's brickyard. No one witnessed the actual accident but several persons observed the scene after McDougall's body was found. Their testimony, along with photographs taken by police investigators, indicated that the forklift was stopped with its back wheels against a pile of bricks and with its front drive wheels still spinning in reverse.
 
 
 3
 Some of the witnesses observed circular or semicircular tire tracks and what appeared to be drag marks in the vicinity of the forklift. The only blood found in the area, though, was immediately around McDougall's body and on one of the lift's cross members underneath the driver's seat. Witnesses also testified that the surface of the brickyard in the accident area was smooth and level with no potholes or debris in the forklift's path. McDougall's wallet, a pack of cigarettes, and a lighter were found on the ground near the scene of the accident.
 
 PLAINTIFF'S EXPERT TESTIMONY
 
 4
 On the issues of negligent design and causation, the plaintiffs offered the opinions of an expert in safety and accident reconstruction. Daniel Pacheco, a safety engineer, testified to his theory of how the accident happened. After studying the relevant evidence, Pacheco concluded that McDougall fell out of the forklift's cab as he was driving the truck in a reverse leftward turn. Since the lift had no rear-view mirrors and since the cab door would not open a full 180 degrees, McDougall had to lean out of the cab past the protruding door and turn to look backwards in order to accomplish this maneuver. Pacheco reasoned that McDougall may have been bounced off the forklift while leaning out of the cab. The forklift then ran over him, dragging him backward and trapping his body under the truck's forks.
 
 
 5
 Pacheco also testified that in his opinion the forklift was defectively designed because it did not possess any of a number of possible safety features which could have prevented the accident. Pacheco identified a number of specific design flaws and suggested remedies for each. First, the truck's rigid suspension system and the fact that the driver's seat was located to the left side rather than in the center of the cab increased the risk that drivers could be thrown or bounced from the forklift. He stated that a driver restraint device, such as a seat belt or arm rest, would have reduced this risk. Second, the fact that the cab door would not swing completely open required drivers to lean out of the cab in order to see around the door. Pacheco stated that it would have been a simple matter to design the door so that, when opened, it would fold all the way back against the side of the truck. Finally, he suggested that equipping the lift with a seat brake, a device that would allow the forklift to move only when someone was sitting in the driver's seat, could prevent fallen drivers from being run over by their own machines.
 
 
 6
 Caterpillar argues that Pacheco's opinion testimony regarding causation was speculative and inconsistent with the evidence and should therefore not have been admitted. Caterpillar points to several portions of the record which it claims are undisputed and contrary to this opinion. First, several witnesses testified that drag marks or tire tracks indicated that the vehicle travelled in one or more complete circles before coming to a stop against a pile of bricks. Second, without an operator at the wheel, the forklift's travel would have begun to straighten out after travelling four to six feet. Thus, Caterpillar concludes that the forklift dragged McDougall's body in at least one full circle and that, contrary to Pacheco's opinion, this could only have occurred if someone else drove the forklift over McDougall. Third, an empty soda can and a bottle of antifreeze, shown by photographs to be resting upright in the forklift cab after the accident, would have been overturned by any jolt sufficient to throw McDougall from the truck. Fourth, given the smooth surface of the brickyard, there was no evidence to suggest a cause for the alleged bounce.
 
 
 7
 As we have frequently stated, "[i]t is fixed law that an expert can give his opinion on the basis of hypothetical facts, but those facts must be established by independent evidence properly introduced." Newman v. Hy-Way Heat Systems, Inc., 789 F.2d 269 (4th Cir.1986) (internal quotation and citations omitted). "Such limitation of expert opinion to material facts supported by or consistent with the evidence has long been the law in this circuit, and remains a requirement under the liberal standard of [Federal Rule of Evidence] 703. Cunningham v. Rendezvous, Inc., 699 F.2d 676 (4th Cir.1983) (citations omitted). We note that in reviewing a trial court's ruling on the admissibility of expert opinion testimony, our review of the decision below is limited by the abuse of discretion standard. See Newman v. Hy-Way Heat, supra.
 
 
 8
 We agree with the district court that the facts pointed out by Caterpillar are neither as undisputed or as contrary to Pacheco's opinion as the defendant claims. The testimony regarding the drag marks differed among the witnesses from three circles to less than a full circle. Further, the testimony in no way demonstrates that all of these marks were made, as Caterpillar assumes, after McDougall fell under the forklift--he operated the lift in the yard all morning and could have made the track marks prior to the accident. Further, the fact that the lift would have straightened itself out, and thus could not end up in its final resting place without an operator, was contradicted by the reasonable possibility that the wheels were turned by their collision with the brick pile against which the lift came to rest. The evidence also did not require the jury to believe Caterpillar's contention that some great force was required to throw McDougall from the cab. Caterpillar's own videotape evidence shows that in order to drive the forklift in reverse, a driver must lean precariously out of the left hand side of the cab and twist backwards in order to see around the back of the lift while driving in reverse. The independent evidence was therefore not so undisputed or contradictory that the trial court was required to find that Pacheco's testimony was inadmissible speculation.[1]
 
 
 9
 On the issue of damages, plaintiffs presented the testimony of their medical expert, Dr. John Smialek, Chief Medical Examiner for the State of Maryland. Dr. Smialek reviewed the autopsy reports prepared by a member of his staff who examined McDougall's body after the accident. He testified that because McDougall did not sustain any serious head injuries, he probably lived for about four minutes after he was run over and that he was probably conscious for up to two minutes. This testimony was offered in support of plaintiff's claim for conscious pain and suffering.
 
 
 10
 Caterpillar asserts that the trial court erred in allowing this testimony. Caterpillar claims Dr. Smialek's opinion was speculative because there was no eyewitness testimony to show McDougall was conscious prior to the accident. We decline to hold that Dr. Smialek's expert medical testimony was speculative merely because Caterpillar speculates that McDougall may have been unconscious prior to the accident. Just as there was no specific evidence that McDougall was conscious before the accident, there was no specific evidence that he was not conscious. This issue was thus a proper matter for the jury to resolve and accordingly the trial court did not abuse its discretion in allowing Dr. Smialek's testimony.
 
 SUFFICIENCY OF THE EVIDENCE OF DESIGN DEFECT
 
 11
 Caterpillar also challenges the sufficiency of the evidence of defective design and asserts that the district court erred in refusing to grant its motion for judgment n.o.v. "The question to be resolved when deciding a motion for judgment notwithstanding the verdict is whether there is evidence on which a jury can properly base a verdict." Lust v. Clark Equipment Co., Inc., 792 F.2d 436, 437 (4th Cir.1986). And in answering this question, "we must view the evidence in the light most favorable to the party against whom the motion is made, giving him the benefit of all reasonable inferences from the evidence." Tights Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1056 (4th Cir.1976).
 
 
 12
 Caterpillar asserts that the plaintiffs produced no evidence to support an inference that accidents like McDougall's were reasonably foreseeable. However, plaintiffs' expert testified that the installation of a driver restraint system, such as a seat belt or arm rest, or the use of a seat brake could have prevented McDougall's death. Documentary evidence indicated that Caterpillar installed seat belts on forklifts sold to the United States Navy and installed seat brakes on its various electrically powered forklifts. In fact, seat brakes were an optional safety feature available for the forklift at issue here. Plaintiffs also produced sales literature showing that seat belts and seat brakes were standard equipment on internal combustion forklifts manufactured by one of Capterpillar's competitors.[2]
 
 
 13
 Viewing this evidence in the light most favorable to the plaintiffs, we cannot say that the district court was required to reject the jury's verdict. This evidence was sufficient to allow the jury to conclude that the industry was aware of the need for and utility of various driver restraint systems to prevent accidents like McDougall's. From this conclusion the jury could reasonably infer that accidents like McDougall's were foreseeable.
 
 
 14
 Contrary to plaintiffs' assertions on cross-appeal this evidence was not sufficient to raise a jury question regarding punitive damages. "Under Maryland law, no matter what the theory of recovery, punitive damages cannot be recovered absent malice, actual or implied." Saval v. BL Ltd., 710 F.2d 1027, 1033 (4th Cir.1983). Tort plaintiffs need not prove actual malice but must demonstrate the defendant's implied malice by showing "conduct of an extraordinary nature characterized by wanton or reckless disregard for the right of others." 710 F.2d, at 1034, quoting Wedeman v. City Chevrolet, 278 Md. 524, 366 A.2d 7, 13 (1976)
 
 
 15
 Plaintiffs here were able to present enough evidence to support the jury's conclusion that accidents like McDougall's were foreseeable. However, in the absence of any evidence that similar accidents had in fact occurred before and that Caterpillar had ignored such accidents in designing its forklifts, plaintiffs failed to show that Caterpillar acted with reckless or wanton disregard. Cf. Martin v. Fleissner GMBH, 741 F.2d 61 (4th Cir.1984) (overturning punitive damages awarded for manufacturer's negligent safety design). Thus the district court properly refused to submit the issue of punitive damages to the jury.
 
 CONCLUSION
 
 16
 While this was undoubtedly a very close case, the jury apparently found the plaintiffs' explanation of how the accident occurred more believable than the defendant's suggestion that McDougall was run over by a "phantom" driver. On the evidence presented the jury was entitled to so find and the judgment below is therefore
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Because we find that Pacheco's testimony was admissible and supported by the evidence, we reject Caterpillar's argument that the plaintiffs' evidence was legally insufficient to prove the cause of the accident. Once Pacheco's testimony was admitted, it was for the jury to decide his credibility and to weigh the merits of his opinion. And since we find that Pacheco's testimony was supported by the evidence, the jury could reasonably find that the accident occurred in the manner Pacheco described
 
 
 [2]
 Caterpillar also challenges the admissibility of this sales literature, a brochure for Clark Equipment Corporation's Series 500 forklifts. Caterpillar asserts that this brochure describes Clark's 1986 models and is therefore not relevant to the proper standard of forklift safety design in 1974, the model year of the Caterpillar forklift at issue in this case. Plaintiffs assert that the brochure describes Clark's 1978 models and is therefore relevant. The only clue to the actual age of the brochure is a cryptic printing date, "78615MC," which appears on the last page. The parties disagree, however, on what these numbers mean. Caterpillar interprets the numbers to indicate that the brochure was printed in July of 1986. Plaintiffs assert that the first two digits indicate the year and the third digit indicates the month and Mr. Pacheco testified that this was in fact a common industry practice. At any rate, this matter is a purely factual dispute and Caterpillar has not shown the district court's finding on this issue to be clearly erroneous. We also note that even if the brochure was improperly admitted, it was only a minor piece of information in a large trial and its admission was at worst harmless error