974 F.2d 1333
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Beverley C. WOODSON, Plaintiff-Appellant,
v.
MCGEORGE CAMPING CENTER, INCORPORATED; Sunline Coach
Company; Masco Corporation of Indiana,
Defendants-Appellees.
 No. 91-1761.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1992
Decided: Sept. 15, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-90-613)
 Samuel Keith Barker, S. Keith Barker, P.C., Richmond, Virginia, for Appellant.
 Carlyle R. Wimbish, III, Sands, Anderson, Marks & Miller, Richmond, Virginia; William Joseph Owen, Cowan & Owen, P.C., Richmond, Virginia, for Appellees.
 M. Pierce Rucker, II, Sands, Anderson, Marks & Miller, Richmond, Virginia; F. Neil Cowan, Jr., Cowan & Owen, P.C., Richmond, Virginia; William Orr Smith, Kathleen A. Sundberg, William Orr Smith & Associates, Richmond, Virginia, for Appellees.
 E.D.Va.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before WILKINSON and HAMILTON, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 HAMILTON, Circuit Judge:
 
 OPINION
 
 1
 Plaintiff-appellant, Beverley Woodson, sued McGeorge Camping Center, Incorporated (McGeorge), Masco Corporation (Masco) and Sunline Coach Company (Sunline) in Virginia state court for damages arising out of an accident on Interstate 85 in North Carolina. The defendants removed the case to the United States District Court for the Eastern District of Virginia. Woodson moved to remand the case to state court, but the district court denied the request. The case went to trial and, at the conclusion of appellant's case, the district court directed a verdict in favor of the defendants on all claims. Finding that Woodson presented sufficient evidence as to the liability of McGeorge and Masco to withstand their motions for directed verdict, we reverse and remand for a new trial as to these defendants. Finding no such evidence with respect to the liability of Sunline, we affirm that portion of the district court's decision.
 
 
 2
 * We follow our standard of review for directed verdicts and view the evidence in the light most favorable to the non-moving party. Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir. 1987). In July 1988, Woodson began looking at travel trailers for the purpose of taking weekend trips to NASCAR races. Initially, Woodson stopped in McGeorge to see what they had to offer and became interested in both the Fleetwood and Sunline trailer models since they fell within her price range.
 
 
 3
 A short time later, Woodson saw a McGeorge advertisement in the newspaper, listing a sale on Fleetwood trailers. Accompanied by her friend Nancy Will, Woodson entered McGeorge on August 16, 1988, and was met by the same salesman, Emmett Thomas, who assisted Woodson on her first visit to McGeorge. Woodson examined the Fleetwood trailer. Thomas indicated that he could get Woodson the same price on a 1988 model Sunline T-1550 trailer (T-1550), if she wanted it. Woodson then asked Thomas which model would better suit her. Thomas, with knowledge that Woodson had no experience towing trailers, recommended the Sunline model as more preferable because the Fleetwood trailer required the installation of a cooling system on her four-cylinder Jeep Cherokee (Jeep).[1] Woodson, heeding Thomas' advice, agreed to purchase the T-1550. Thomas then informed Woodson she was going to need a hitching system to attach the T-1550 to her Jeep and accompanied her to the parts and accessories department. Thomas asked Woodson whether she wanted the hitch installed by McGeorge, and she replied that she did.
 
 
 4
 In selecting the appropriate hitch to employ in towing the T-1550, Thomas brought two hitches to Woodson's attention. The first contained a built-in sway control device; the other, a Reese hitch manufactured by Reese Products (Reese),[2] did not. Despite the fact that the sales guidelines provided by Masco to McGeorge indicated that a sway control device was required for Woodson's trailer, Thomas recommended the Reese hitch.[3] According to Woodson, Thomas explained:
 
 
 5
 [T]he Reese hitch was the proper hitch for[Woodson] to purchase for [her Jeep]; that it was the top of the line, and that it had-it came very highly recommended and that most people purchased those over the other hitch because it was easy to hitch up and unhitch and that it had two stabilizer bars which prevented sway and that it would keep you from having the oscillation of the trailer behind the vehicle when trucks, or wind or that type [sic] thing caused it.
 
 
 6
 Joint Appendix (J.A.) at 80. Woodson then inquired what Thomas meant by "sway," and, according to her, Thomas said, "Well, when a truck passes you, sometimes the trailer will kind of bounce back and forth, and these stabilizer bars will prevent that from happening." Id. Woodson purchased the Reese hitch along with an independent brake system and eventually left her Jeep with McGeorge for the installation of the trailer hitch and brake system.
 
 
 7
 On August 19, Woodson picked up her Jeep and the trailer. In taking delivery, a McGeorge technician showed her how to operate the electric brake unit by tapping the Jeep's brake pedal and how the light on the brake unit and tail lights on the T-1550 worked. The technician informed Woodson that by tapping the brake she would engage the trailer brake prior to the application of the Jeep's brakes. The technician advised Woodson that this would prevent sway. Before leaving, Woodson inquired if she needed an additional device to control sway and testified that the McGeorge technician replied in the negative.
 
 
 8
 Woodson was also provided copies of the various owners' manuals and warranties, which she read later that weekend. Contrary to the sales guidelines provided to McGeorge by Masco, the owner's manual provided to Woodson relating to the Reese hitch made no reference to the necessity of a sway control device in conjunction with the use of the hitch, although it did refer to methods of controlling sway. In addition, the owner's manual did not indicate that stabilizer bars were not sufficient to control sway when employing the Reese hitch.
 
 
 9
 After purchasing the trailer, Woodson drove her trailer home and practiced towing in and around her house in Mechanicsville, Virginia. Woodson also took the trailer for a weekend trip to the Richmond International Speedway in Richmond, Virginia. On these excursions, she encountered no trouble.
 
 
 10
 On October 7, 1988, Woodson, accompanied by Nancy Will and Linda Moore, towed her trailer to Charlotte, North Carolina. Prior to beginning her return trip on October 10, Woodson checked the air pressure in the tires of the Jeep and the trailer and made sure the trailer was level. On the return trip, Woodson experienced some uneven road. As Woodson approached a downgrade and a curve near milepost 85 on Interstate 85, about fifty miles north of Charlotte, the trailer started to sway. To correct the sway, Woodson tapped the brakes, and the trailer moved in line with the Jeep momentarily. Then, according to Woodson, "the steering wheel felt like it was ripped out of [my hands]." J.A. at 111. The Jeep jackknifed and flipped several times on the highway causing injuries to Woodson and the occupants of the vehicle. Two drivers, one driving behind Woodson and the other travelling in the opposite direction of Woodson, gave testimony at trial consistent with Woodson's version of the events-that the trailer started to sway, then corrected itself, and then suddenly went into a sway condition before going out of control. At the time of the accident, the weather was clear, the highway was dry, and no trucks were passing the trailer.
 
 
 11
 This case was commenced in Virginia state court when Woodson filed a Motion for Judgment[4] on October 14, 1990. The Motion for Judgment delineated fourteen claims arising from the accident. Counts one, five, and nine were negligence actions against McGeorge, Sunline, and Masco. Counts two, six, and ten were actions against McGeorge, Sunline, and Masco for breach of implied warranties of merchantability and fitness for a particular purpose. Counts three, eight, and eleven were actions for breach of express warranty against McGeorge, Sunline, and Masco. Counts four, seven, and eleven were actions against McGeorge, Sunline, and Masco for strict liability in tort. Counts thirteen and fourteen were allegations that the defendants failed to comply with the Magnuson-Moss Warranty Act (MMWA or Act), 15 U.S.C. § 2301 et seq.
 
 
 12
 On November 14, 1990, the defendants filed a notice of removal. On November 26, 1990, Woodson filed a motion to remand the case to Virginia state court, and the district court denied this request on January 22, 1991. Woodson did not note an interlocutory appeal.
 
 
 13
 The defendants moved to dismiss, asserting, inter alia, that because Virginia law had never recognized a claim for strict liability in tort, counts four, seven, and eleven should be dismissed. Woodson responded by arguing that Virginia law "may well adopt" a strict liability theory. J.A. at 829. The district court granted the motion to dismiss as to the counts alleging strict liability in tort, holding that Virginia has not recognized such a cause of action.[5]
 
 
 14
 During discovery, Woodson wanted McGeorge to provide a list of individuals who purchased a 1988 T-1550 trailer from McGeorge for the purpose of conducting scientific testing. McGeorge objected to the discovery request as "oppressive, unduly burdensome," and irrelevant, and Woodson moved to compel production. The district court denied Woodson's motion to compel, reasoning that "Woodson here would seek to compel production of irrelevant personal information about persons who never complained about their trailer, or who purchased their trailers after Woodson's accident." J.A. at 852. The district court added "the information sought would appear relevant only to the extent that older Sunline trailers of the model named are similar in design, and were hitched up to purchasers' vehicles in a way similar to that used to connect Woodson's car and trailer." Id. The district court made no reference to Woodson's desire to perform scientific tests on the T-1550.
 
 
 15
 The district court's pretrial order required that exhibits be identified prior to trial and objections to those exhibits be specified. The district court held a pretrial hearing the day before trial and ruled on the admissibility of the disputed exhibits. Exhibit nine was an article from a January 1982 issue of Trailer Life magazine, which Reese reprinted in a Masco publication. The article stated that the average recreational vehicle dealer could not be counted on to provide accurate advice about sway control. The article also noted that sway control devices are "absolutely essential" for small or medium-sized trailers.[6] Woodson argued that the article demonstrated that Masco had knowledge of the dangerousness of a trailer hitch without a sway control device employed with small trailers and recognition of the inability of retailers to provide accurate advice regarding sway control. Masco argued the article was not relevant, and the district court agreed.
 
 
 16
 At the same pretrial hearing, the district court heard arguments on the issue of whether plaintiff's expert, Jerry Burke, should be allowed to testify. Masco argued that Burke was not qualified and had no factual basis on which to base an opinion.[7] Counsel for Woodson argued:
 
 
 17
 [N]ot only is Mr. Burke an engineer and an inventor, but he is a licensed engineer. He has himself designed several trailers. He has towed trailers over a 30-year period, has used sway control. As an engineer he has observed how the sway controls work, the weight-equalizing hitches. He has been qualified as an expert on sway control and on equalizing hitches in the Circuit Court of the City of Richmond in the last two years in a case against McGeorge dealing with the lack of a recommendation for a sway control. He has had experience studying that accident, and he has had experience. And in addition, he knows the kind of Jeep. He has seen the Jeep, he knows its speed, its size, he knows what the tires are like.
 
 
 18
 J.A. 52-53. The nuts and bolts of Woodson's argument as to the admissibility of Burke's testimony was that he was qualified and had a sufficient factual basis to render an opinion as to the cause of the accident[8] and the defective nature of the trailer hitch. The district court overruled the objections stating "I'm not going to exclude Dr. Burke on anything but the issue of warnings.... But as far as the rest of the attack ... [it] goes to weight." J.A. at 55.
 
 
 19
 The case went to trial before a jury on July 9, 1991. At trial, it was readily apparent that Woodson's theory of the case was that a sway condition caused the accident, a sway control device would have prevented the accident, the Reese hitch was defective, McGeorge failed to recommend a sway control device, and Masco and McGeorge failed to warn Woodson in the wake of known dangers. Several witnesses who testified at trial supported Woodson's account that the trailer swayed, corrected itself and then lost control. John Powell, who was following Woodson's Jeep, testified as to his observations of the accident: "We were getting ready to pass and we noticed some swaying, so we backed off because it didn't look like it was going to make it. So we backed off, pulled out of the passing lane, fell in behind it, and as we continued to follow it eventually lost control." J.A. at 254. Randy McCarn, a motorist travelling in the opposite direction of Woodson's Jeep, testified that he saw Woodson's trailer start to sway, straighten up briefly and eventually go out of control.
 
 
 20
 As part of her case in chief, Woodson offered the expert testimony of Burke. Burke testified that a sway condition caused the accident and that a sway control device would have prevented the accident. Burke also opined that the hitch was defective. The district court found Burke to be qualified as an expert in the principles and methods of engineering as applied to trailer design, towing devices and sway control.
 
 
 21
 At the close of appellant's case on July 11, the district court granted defendants' motion for a directed verdict on all claims, in large part on the grounds that there was insufficient evidence on the issue of causation. As to Sunline, the district court observed:
 
 
 22
 There was insufficient evidence of a design standard and therefore insufficient evidence of a design defect. No evidence supported finding Sunline manufactured the product negligently. There was therefore no duty to warn.
 
 
 23
 J.A. at 870.
 
 As to Masco, the district court noted:
 
 24
 There was no evidence that the [Reese] hitch was defective in design or manufacture. It apparently performed exactly as it was intended to. There was insufficient evidence to support a duty to mandate sway controls in trailer-hitch combinations of the type Woodson had. Even assuming there was such a duty, there was no support for Burke's conclusion that sway controls would have prevented Woodson's accident.
 
 
 25
 The state law warranty claims fail, because there was insufficient evidence to conclude the hitch or hitch combination was defective or unreasonably dangerous, or performed other than promised by Masco.
 
 
 26
 J.A. at 870-71.
 
 
 27
 Finally, as to McGeorge, the district court noted:
 
 
 28
 [T]he evidence did not establish a standard of care from which any defendant departed, in their failure to require or strongly recommend sway controls. But even assuming negligence in this respect, and assuming that McGeorge's recommendation would have prompted Woodson's use of sway controls, the causation requirement again rears its head. Similar principles make directed verdict on the implied warranty claims appropriate.
 
 
 29
 The evidence did present a factual issue as to whether McGeorge, through its staff, offered an express warranty as to the trailer-hitch combination's performance without sway controls. But the jury could have found that sway controls would have prevented the accident only by accepting Burke's speculative conclusions to that effect. Such speculation is insufficient to establish the probability required under Virginia law principles of causation.
 
 
 30
 J.A. at 871-72.
 
 Woodson noted a timely appeal.[9]
 II
 
 31
 Woodson argues that the district court's refusal to remand the case to the Virginia state court constitutes reversible error. This argument is without merit. In Able v. Upjohn Co., Inc., we recognized that the failure to pursue an interlocutory appeal resulted in a waiver of the right to contest the validity of removal where the district court could have exercised jurisdiction over the controversy at the time of the actual trial or the entry of judgment. 829 F.2d 1330, 1333 (4th Cir. 1987). In the case sub judice, at the time of trial or the entry of judgment, the district court could have exercised original jurisdiction over the MMWA claims and pendent jurisdiction over the pendent, gardenvariety state claims. 28 U.S.C. § 1441(b).[10] Accordingly, appellant's failure to note an interlocutory appeal operates as a waiver of the right to raise the remand issue on appeal.
 
 III
 
 32
 Plaintiff raises certain assignments of error regarding discovery. We address these below.
 
 
 33
 * During discovery, Woodson sought the name and address of each purchaser of a 1988 T-1550 which McGeorge ever sold for the purpose of conducting scientific tests on the trailer. The district court denied this request. Woodson argues that the district court's denial of this request was an abuse of discretion. We agree.
 
 
 34
 The district court reasoned that the request was irrelevant because Woodson sought "to compel production of irrelevant personal information about persons who never complained about their trailer, or who purchased their trailers after Woodson's accident." J.A. at 852. The district court also noted "the information sought would appear relevant only to the extent that older Sunline trailers of the model named are similar in design, and were hitched up to purchasers' vehicles in a way similar to that used to connect Woodson's car and trailer." Id. McGeorge has offered alternative reasons for upholding the district court's denial of the discovery request, asserting that plaintiff's argument on this point "rings hollow for several reasons." Appellee's Brief at 17. First, McGeorge argues the discovery request was improper because it was made on the eve of the discovery cutoff. Second, McGeorge argues "there were many less complicated ways by which Woodson could have gained access to a Sunline T-1550 ... for testing purposes." Id. Third, McGeorge argues "testing of an intact travel trailer was apparently unnecessary to Woodson's expert, who testified that he first reached his opinions and then went back to justify his opinions with his research." Id. Our review of the record leads us to conclude that it is McGeorge's arguments that ring hollow, for several reasons, and that the district court should have compelled McGeorge to comply with the request.
 
 
 35
 Fed. R. Civ. Proc. 26(b)(1) provides that a party"may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." The Rule further provides: "It is not an objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Id.
 
 
 36
 Plaintiff's discovery request was certainly germane, if not crucial, to the resolution of the issues of liability. Woodson's theory of the case depended on her establishing that a sway condition caused the accident which could have been avoided by the installation and use of an appropriate sway control device. Consistent with the development of Woodson's theory of the case, she desired to obtain a similar model of the Sunline T-1550 for the purposes of testing it with the Reese hitch combination. In furtherance of this objective, a list of purchasers of the 1988 model T-1550 from McGeorge is a reasonable and unburdensome method for possibly obtaining a 1988 T-1550 for the purposes of testing. In addition, the request also would assist plaintiff in investigating problems other owners might have had with the T-1550 and Reese hitch combination. Thus, this list of purchasers "is relevant to the subject matter involved in the pending action ... [and] appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 26(b)(1).
 
 
 37
 The district court's justifications for denying Woodson's motion to compel are misplaced. The fact that a person never complained about the T-1550 is not ample justification to deny the motion to compel in light of Woodson's need to test a 1988 model Sunline T-1550, nor was the personal information sought irrelevant. The names and addresses were the only way for Woodson to contact the owners of the 1988 model Sunline T-1550. In addition, the fact that a person bought a 1988 model Sunline T-1550 after Woodson's accident is of no import-the models would be the same. In short, it was indeed helpful, if not crucial, for Woodson to test a 1988 model Sunline T1550, and thus we disagree with the district court's conclusion that "the information sought would appear relevant only to the extent that older Sunline trailers of the model named are similar in design, and were hitched up to purchasers' vehicles in a way similar to that used to connect Woodson's car and trailer." J.A. at 852. This completely ignores Woodson's desire to test the T-1550 with the Reese hitch combination.
 
 
 38
 The arguments advanced by McGeorge, none of which the district court explicitly or implicitly found meritorious, do not alter the result here. First, under the circumstances, this request, while admittedly made on the eve of the discovery deadline, was still timely made and was not of the nature that would have caused considerable expenditure of resources to comply with before the discovery deadline. In addition, the availability of less complicated ways of obtaining the information is not the touchstone of determining whether matter is discoverable. Here, interestingly, McGeorge has not advanced one "less complicated way[ ] by which Woodson could have gained access to a Sunline T-1550 ... for testing purposes." Appellee's Brief at 17. Finally, the record simply does not support the assertion and suggests otherwise that Burke felt it was unnecessary to test the T1550.
 
 
 39
 On the one hand McGeorge objected to this discovery request and on the other criticized plaintiff's case for failure to test the T-1550 using the Reese hitch combination. In the past, in fairness to all civil litigants, we have never sanctioned "fishing expeditions," but alternatively we cannot today condone this type of legal legerdemain. On remand, the district court is directed to compel McGeorge to provide plaintiff a list of the purchasers of the 1988 T-1550.[11]
 
 B
 
 40
 Plaintiff also argues the district court erred in excluding certain evidence, in particular plaintiff's exhibit nine, an article from the January 1982 issue of Trailer Life magazine, which Reese reprinted in a Masco publication and distributed as a part of its sales literature. We agree with Woodson. We review the district court's evidentiary rulings under the abuse of discretion standard. Persinger v. Norfolk & Western Railway Co., 920 F.2d 1185, 1187 (4th Cir. 1990). The Trailer Life article states in part:
 
 
 41
 there is a great deal of misunderstanding about what a particular sway control device will do and what it won't. Equally unfortunate is the fact that the average RV dealer or hitch installer can't be counted on to provide accurate advice about sway control devices because they don't generally understand the equipment much better than the inexperienced trailerist.
 
 J.A. at 721. The article further states:
 
 42
 Friction bars are used by most of the leading hitch manufacturers and for the most part, they do a good job of reducing sway when used with trailers that are small or mediumsized and have relatively light hitch weights. Trailers of that size are much more susceptible to tail wag than large heavy coaches, and we regard use of a friction sway bar as abso lutely essential for towing such trailers with the Reese ... load equalizing hitches.
 
 
 43
 Id.
 
 
 44
 Appellees argue that the article was "on a type of sway control, the dual-cam device, that could not be used with the T-1550," and therefore not relevant. Appellee's Brief at 18. Appellees' argument is a mischaracterization, if not a gross one, of the article-the article clearly applied to friction sway bars in general and only later discusses the dual-cam device. The article clearly relates to Masco's knowledge years before the accident of the dangerousness of hitches without sway control, and thus was relevant to Woodson's claims of liability, particularly a negligence claim based on a failure to warn. This article should have been admitted into evidence.[12]
 
 IV
 
 45
 Our review of a district court's grant of a directed verdict is limited to determining "whether, viewing the evidence in a light most favorable to the non-moving party and giving him the benefit of all reasonable inferences, there is sufficient evidence to support a jury verdict in his favor." Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir.), cert. denied, 490 U.S. 1107 (1988) (citations and footnote omitted). In conducting this inquiry, we may neither weigh the evidence nor assess the credibility of witnesses. Id.; Gairola v. Virginia Dep't of Gen. Serv., 753 F.2d 1281, 1285 (4th Cir. 1985)." The district court is entitled to grant a directed verdict even though some evidence supports the opposite proposition so long as 'there are no controverted issues of fact upon which reasonable minds could differ.' " Kim v. Coppin State College, 662 F.2d 1055, 1059 (4th Cir. 1981) (quoting Proctor v. Colonial Refrigerated Transportation, Inc., 494 F.2d 89, 93 (4th Cir. 1974)).
 
 
 46
 Woodson argues that she presented sufficient evidence to withstand defendants' motion for a directed verdict. We are of the opinion that Woodson presented sufficient evidence to support a jury verdict in her favor as to the liability of Masco and McGeorge. As to Sunline, we are of the opinion that Woodson provided no such evidence.
 
 
 47
 The crux of the arguments by Masco and McGeorge was the alleged deficiencies of Burke's testimony-that he was not qualified and had an insufficient factual basis to render an opinion. Masco and McGeorge all but concede that if Burke was qualified and had a sufficient factual basis to render an opinion, a directed verdict was inappropriate on Woodson's negligence, express warranty, and implied warranty claims.
 
 
 48
 The centerpiece of Woodson's case was that the Reese hitch should have contained a sway control device and that McGeorge failed to recommend that one be used as recommended in the Masco sales guidelines. The alleged defect did not go to the trailer built by Sunline, but rather to the hitch designed and manufactured by Reese. Woodson's evidence of a defect in the trailer was non-existent.
 
 
 49
 To resolve the question of whether Woodson presented sufficient evidence to support a jury verdict in her favor, we must examine Burke's testimony. Burke's vitae includes a B.S. degree in mechanical engineering, experience in researching and designing trailers, experience with hitches and sway control devices, experience testifying as an expert since 1958 and experience testifying as an expert on trailer hitches and sway control devices. Burke also read all the literature available on sway control from the Society of Automotive Engineers and inventors of sway control devices. He has also towed trailers over a thirty-year span, including trailers with and without sway control devices. In addition, Burke had previously been qualified in a similar case involving the field of trailer design and sway control.
 
 
 50
 In preparation for his testimony, Burke read all of the scientific literature on the subject of sway control devices, weight and spring system of travel trailers, and braking systems.[13] He reviewed road elevation maps[14] and videotapes of the accident scene, examined the wreckage, including the trailer, Jeep, trailer hitch, hitch parts and mounting and braking system. Burke reviewed Masco's sway control guide for travel trailers, which indicated that a sway control device should have been used on Woodson's trailer (a trailer of fifteen feet eleven inches and a hitch weight of 240 pounds). Burke also reviewed the deposition testimony of all the witnesses and was present for the testimony of Woodson's witnesses at trial. Finally, Burke conducted tests on the Reese hitch to determine the range of lateral forces it could control. With these qualifications and observations, and given the evidence which had been presented, Burke was qualified to render an opinion as to the cause of the accident and whether the hitch was defective, unreasonably dangerous and/or not fit for its intended purpose.
 
 
 51
 There was also an adequate evidentiary foundation in the record for Burke to give an opinion, not based upon the mere occurrence of an accident or injury, but rather based on a strong inference derived from the evidence that the Jeep was put in a sway situation and that sway caused the accident. Most pointed here is the testimony not only of Woodson, but the testimony of a motorist driving behind Woodson and a motorist travelling in the opposite direction of Woodson. Their testimony indicated that the sway of the trailer caused the Jeep to jackknife.
 
 
 52
 There were also sufficient facts in the record for Burke to opine that a sway control device would have prevented the accident. Burke conducted tests on the Reese hitch to determine the range of lateral forces it could withstand. From these tests and the evidence as to the speed the Jeep was travelling at the time of the accident, its subsequent behavior, and the design of the trailer, a sufficient foundation was laid for Burke to opine that a sway control device could have prevented the sway. Burke explained that a sway control device is sitting "there ready to act.... It doesn't push when the trailer pushes or push back and have to delay. It is instantaneous. Just as soon as the trailer has a force acting on it, this ... device would stop that force, stop it dead in its tracks...." J.A. at 293-94. The sales guidelines themselves specifically state that a sway control device creates a friction holding effect to control sway before it starts. Ironically, the district court ended Burke's direct examination by asking if a sway control device would be effective against the level of force Woodson encountered at the time of the accident. Burke responded in the affirmative.
 
 
 53
 As a whole, Burke's testimony, along with the other evidence in the record, was sufficient to support a jury verdict in favor of Woodson as to the liability of Masco and McGeorge. The district court's criticism of Burke's testimony went more to its credibility and weight than its admissibility. The district court acknowledged this the day before trial when it ruled "I'm not going to exclude Dr. Burke on anything but the issue of warnings.... But as far as the rest of the attack ... [it] goes to weight." J.A. at 55. As opposed to being mere speculation or conjecture, Burke's conclusions were grounded in stated reason and deduction. His opinion was derived from hypothetical facts that were established by independent evidence. See Newman v. Hy-Way Heat Systems, Inc., 789 F.2d 269, 270 (4th Cir. 1986) (it is permissible for expert to render opinion based on hypothetical facts provided those facts are established by independent evidence properly introduced). In addition, Burke's testimony would assist the trier of fact in understanding industry standards, design defects, and the intricacies of the causes of sway and sway prevention. In these regards, Burke's testimony was neither cumulative, see United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991), nor superfluous. See Persinger, 920 F.2d at 1188. The facts as presented permitted an expert opinion that a sway control device would have prevented the accident and that the hitch was defective.
 
 
 54
 In a light most favorable to the plaintiff, it was demonstrated that the hitch without sway control was unreasonably dangerous and/or not fit for its intended purpose. McGeorge knew from its Masco sales guidelines that a sway control device was recommended for Woodson's T-1550. Despite this, McGeorge advised Woodson she did not need a hitch that contained a sway control device. Moreover, Masco's failure to place a sway control device on the hitch, in light of the dangers recognized in the Trailer Life article, was arguably negligent, and thus also called into question the adequacy of any warnings. Featherall v. Firestone Tire and Rubber Co., 252 S.E.2d 358 (Va. 1975).[15] With this in mind, it follows that Woodson presented sufficient evidence to support a jury verdict in her favor on the claims asserted against Masco and McGeorge (express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose). Southern States Coop v. Doggett, 292 S.E.2d 331 (Va. 1982). Accordingly, a directed verdict in favor of Masco and McGeorge was inappropriate at this juncture in the proceeding.
 
 
 55
 In summary, the district court essentially conducted an impermissible piecemeal evaluation of the evidence. The assessment of the credibility and weight of Burke's testimony was not a question to be resolved by the court. While the inelegance in the presentation of the case is readily apparent from the record and there are certainly reasonable inferences that can be drawn against Woodson, it was not appropriate to grant a directed verdict.[16]
 
 
 56
 At argument, counsel for Woodson readily acknowledged that Woodson's claims against Sunline were significantly weaker than the claims against Masco and McGeorge. Sunline essentially had nothing to do with the Reese hitch. Woodson simply failed to present any evidence that would create a jury question as to whether Sunline manufactured the trailer negligently, negligently failed to warn Woodson or breached any express or implied warranties with respect to the trailer.17 It follows that Woodson's MMWA claim against Sunline, which simply duplicates state law warranty claims, must similarly fail. Accordingly, a directed verdict in favor of Sunline was appropriate.
 
 V
 
 57
 In conclusion, the decision of the district court granting Sunline's motion for a directed verdict is affirmed. We reverse, however, the district court's decision to grant a directed verdict in favor of Masco and McGeorge, and remand for a new trial consistent with this opinion.
 
 
 58
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR NEW TRIAL
 
 
 
 [1]
 Woodson's Jeep was equipped with a 2.5 liter engine
 
 
 [2]
 Reese Products is a division of Masco
 
 
 [3]
 The T-1550 is fifteen feet eleven inches in length and has a hitch weight of 240 pounds. The Masco sales guidelines recommend that a sway control device be employed on a trailer type fitting these specifications
 
 
 [4]
 Under the Code of Virginia, a motion for judgment is the equivalent of a civil complaint for damages. Va. Code § 8.01-271; Rule 3.3 of the Rules of Virginia Supreme Court
 
 
 [5]
 Woodson does not appeal the district court's dismissal of counts four, seven, and eleven
 
 
 [6]
 Of approximately twenty trailer models in the Sunline line, the T-1550 is the second smallest
 
 
 [7]
 More specifically, counsel for Masco argued:
 [Burke] has done no tests; he has developed no evidence; he has no factual basis. He can't tell you how the trailer was loaded, the tongue weight, and all of the things that he acknowledges are important in sway. But he doesn't know these things.
 J.A. at 49.
 
 
 [8]
 More specifically, counsel for Woodson argued that it will be up to the jury to decide the weight of [Burke's] opinion...." J.A. at 54
 
 
 [9]
 Prior to oral argument, Woodson moved this court to permit the filing of a videotape exhibit as an addendum to the Joint Appendix. The motion is granted
 
 
 [10]
 Under the MMWA, subject to a few exceptions inapplicable here, a consumer who is damaged by the failure of a supplier, warrantor or service contractor to comply with any obligation under the Act, or under any written warranty or service contract, may bring suit for damages and other legal and equitable relief in any appropriate district court of the United States. 15 U.S.C. §§ 2310(d)(1) & (d)(1)(B)
 
 
 [11]
 We leave it to the district court's discretion on remand to determine whether McGeorge's burden of production should be limited to a suitable geographical area
 
 
 [12]
 Plaintiff also raises additional arguments as to various evidentiary rulings made by the district court which we find are without merit
 
 
 [13]
 Of particular note, the literature reviewed by Burke included a recommendation from another trailer manufacturer that sway control devices always be used
 
 
 [14]
 Burke reviewed state highway department road elevation maps of the area leading up to and including the accident
 
 
 [15]
 We find no merit to Woodson's argument that a jury issue was presented on whether McGeorge's trailer-brake installation was negligent
 
 
 [16]
 We have reviewed Woodson's claims against McGeorge and Masco under the MMWA and conclude they are viable to the extent they duplicate state law warranty claims (i.e., allowing recovery for breach of a written or implied warranty under state law). 15 U.S.C. § 2310(d)(1). Because a violation of § 2308 (prohibiting disclaimer of implied warranties), § 2304(a)(2) (prohibiting full warrantors from limiting the duration of implied warranties), or § 2304(a)(2)(prohibiting full warrantors from excluding or limiting consequential damages for breach of written or implied warranty unless exclusion or limitation conspicuously appears on the face of the warranty), is not alleged, damages for personal injuries are not recoverable. 15 U.S.C. § 2311(b)(2); See also, Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1068 (5th Cir. 1984) (§ 2311(b)(2) prohibits recovery for personal injuries based solely on a breach of warranty, express or implied)
 
 
 [17]
 Sunline's express warranty guaranteed that the trailer would be free of defects. There was no credible evidence that the trailer was defective, unreasonably dangerous and/or not fit for its intended purpose